**THERMODYNE FOOD SERVICE PRODUCTS, INC., and AFTEC, INC., Plaintiffs,**

v.

**McDONALD'S CORPORATION, et al., Defendants.**

No. 95 C 6747.

United States District Court,
N.D. Illinois,
Eastern Division.

Oct. 1, 1996.

Craig M. White, Jennifer Kathryn Walter, Andrew Erik Skopp, Wildman, Harrold, Allen & Dixon, Chicago, IL, Gene R. Leeuw, Klineman Rose Wolf and Wallack, Indianapolis, IN, William D. Swift, Swift and Finlayson, Fort Wayne, IN, Charleyne L. Gabriel, John M. Mead, Leeuw, Plopper & Earnest, P.C., Indianapolis, IN, for Thermodyne Food Service Products, Inc. and AFTEC Inc.

Jack J. Carriglio, Richard G. Schultz, Carmen David Caruso, Jeffrey Charles Blumenthal, Steven Howard Gistenson, Marla Belson Wilneff, Foran & Schultz, Chicago, IL, Michael L. James, Baker and Daniels, Fort Wayne, IN, for McDonald's Corporation.

David L. Schiavone, Christopher Qualley King, Mary L. Mills, Sonnenschein, Nath & Rosenthal, Chicago, IL, for Specialty Equipment Companies, Inc.

John Lawrence Conlon, Eric S. Rein, Schwartz, Cooper, Greenberger & Krauss, Chicago, IL, for OSI Industries, Inc., Proddell Corp., Gands Corp. and Beltec International.

Robert Eliot Shapiro, Gayle L. Yeatman, Barack, Ferrazzano, Kirschbaum & Perlman, Chicago, IL, James R. Higgins, Jr., Middleton & Reutlinger, Louisville, KY, James N. Williams, Middleton and Reutlinger, New Albany, IN, for Liebco, Inc., Benno Lieberman.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This matter is before the Court on Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Defendants' motion is granted as to count VI, but denied as to all other counts of the second amended complaint.

### I. BACKGROUND

Plaintiff Thermodyne Food Service Products Inc. is engaged in the manufacture and sale of food service products and systems. Thermodyne's claim to fame is its development of ovens which utilize "Thermodyne technology" for transferring heat to food items. Generally speaking, the Thermodyne technology uses precise computer controls and the interrelationship of numerous component parts to cook and hold[1] food items at lower temperatures through conduction processes, rather than by means of convection heat. The benefit is that the conduction method of cooking and holding food items reduces water loss and the risk of harmful bacteriological development.

Plaintiff AFTEC Inc. is engaged in the research and development of food service products and systems, focusing primarily on developing and improving the Thermodyne technology.

Thermodyne and AFTEC (collectively referred to as "Plaintiffs") are jointly owned and managed. They enjoy somewhat of a symbiotic relationship—Thermodyne is the manufacturing and sales arm and AFTEC is the research and development arm. Vince Tippman is the President and majority shareholder of both corporations.

In May of 1987, Defendant McDonald's Corporation contacted AFTEC to inquire about Plaintiffs' cooking and holding technology. The next month, AFTEC began working steadily on the testing and design of its technology to meet McDonald's specific needs and products. For approximately the next three years, AFTEC conducted numerous demonstrations for McDonald's personnel.

In June of 1989, Plaintiffs' agents visited McDonald's offices. They were taken to Defendant Specialty Equipment Companies Inc.'s Bloomfield division for the purpose of discussing a joint venture for the production of ovens. McDonald's indicated an interest in purchasing thousands of ovens.

Unknown to Plaintiffs, on November 13, 1989, Eugene Tippman, brother of Plaintiffs' President Vincent Tippman, was hired by Specialty Equipment—a competitor of Plaintiffs—to work in its Bloomfield division as a research engineer. Upon learning of Eugene Tippman's employment, Plaintiffs in-

---

**1.** To "Hold" food apparently refers to the ability to keep food at a steady, constant, precise temperature for a "prolonged" period of time.

formed Specialty Equipment of his covenant not to compete and requested information concerning his job duties. Shortly thereafter, Specialty Equipment terminated Eugene Tippman.

In the spring of 1990, Sheldon Lavin, President of Defendant OSI Industries Inc.—a supplier of McDonald's—and chairman of both Defendant Gands Corporation and Defendant Prodell Corporation met secretly with Defendant Benno Liebermann—an officer, director, shareholder, and employee of Thermodyne and AFTEC—at one of AFTEC's facilities. The meeting was allegedly conducted for the purpose of "stealing" Plaintiffs' Thermodyne technology. The next month, Liebermann authorized the shipment of a Thermodyne oven to McDonald's, but allegedly altered the destination on the shipping order and instead sent it to OSI. A few days later, in a similar manner, Liebermann sent a replacement oven originally destined for McDonald's, to OSI.

In June of 1990, McDonald's contacted Plaintiffs to inform them that McDonald's formally approved the Thermodyne technology for its use. A couple of days later, McDonald's insisted that Plaintiffs sell McDonald's a particular Thermodyne oven. Plaintiffs originally resisted, but later acquiesced when McDonald's President and Senior Vice President assured Plaintiffs that McDonald's approved their technology for McDonald's use.

Two days later, Liebermann, unbeknownst to Plaintiffs, entered into a confidentiality agreement with McDonald's pertaining to the development of, among other things, cooking ovens. Within days of executing the confidentiality agreement, McDonald's informed Plaintiffs that all of Plaintiffs' equipment would be returned immediately.

On July 18, 1990, Liebermann resigned from his position at Thermodyne and AFTEC and joined Lavin at OSI. On July 24, 1990, Prodell entered into a partnership agreement with Defendant Liebco Inc.—Liebermann is Liebco's principal—to develop, manufacture, and distribute food processing equipment. The partnership corporation was named Beltec International.[2]

At a multi-unit food service operators convention in May of 1993, several of McDonald's suppliers informed Plaintiffs that McDonald's was testing a "Thermodyne-type" oven in Puerto Rico. After the convention, an article appeared in the *Nation's Restaurant News* discussing McDonald's test marketing in North Carolina of the "McStuffin Sandwich." The article described the special holding cabinet in which McDonald's claimed that it could "hold" sandwiches for up to two hours before serving.

Plaintiffs were suspicious of the holding cabinet and sent employees to investigate. McDonald's product was known as the "Temperfect oven" and it was manufactured by a division of Specialty Equipment. Plaintiffs suspected that McDonald's somehow "stole" their technology.

In July of 1995, Plaintiffs filed an eight-count complaint (the complaint was amended twice) against eight defendants. The complaint alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Trade Secrets Act, unfair competition, breach of confidence, interference with contractual relations, breach of fiduciary duty, breach of contract, and conspiracy to interfere with contractual relations.

In May of 1996, the Court dismissed the Illinois Consumer Fraud and Deceptive Business Practices Act claim (count I), the unfair competition claim (count III), and the breach of confidence claim (count IV). This matter is now before the Court on Defendants' motion for summary judgment on the remaining counts of the second amended complaint.

## II. SUMMARY JUDGMENT—STANDARD OF REVIEW

Under FED.R.CIV.P. 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Black v. Henry Pratt Co.*, 778 F.2d 1278, 1281 (7th Cir.1985). The moving party has the burden of providing proper documentary

2. The word "Beltec" stands for "Benno E. Liebermann technologies."

evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Unquestionably, in determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist,* 833 F.2d 639 (7th Cir.1987).

### III. *DISCUSSION*

Defendants seek summary judgment on Plaintiffs' Illinois Trade Secrets Act claim (count II), tortious interference with contractual relations claim (count V), breach of fiduciary duty claim (count VI), breach of contract claim (count VII), and conspiracy to tortiously interfere with contractual relations claim (count VIII). Defendants seek partial summary judgment with respect to Plaintiffs' damages request. As discussed below, the motion for summary judgment and partial summary judgment is allowed with respect to only the breach of fiduciary duty claim (count VI)—it is denied in all other respects.

### A. *Trade Secret*

■ A trade secret is a creation of state statutory law. The Illinois Trade Secret Act (ITSA) defines a trade secret as "information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of

actual or potential customers or suppliers, that:"

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

765 ILCS 1065/2(d). As evidenced by both of the statutory prongs, whether the information sought to be protected qualifies as a trade secret focuses fundamentally on the *secrecy* of such information. *See Mangren Research & Dev. Corp. v. National Chem. Co., Inc.,* 87 F.3d 937, 942 (7th Cir.1996); *Computer Care v. Service Sys. Enter., Inc.,* 982 F.2d 1063, 1072 (7th Cir.1992). Once the plaintiff establishes a protected trade secret, he next must show that the defendant "misappropriated" it. 765 ILCS 1065/2(b).

■ Prior to addressing the merits of Defendants' attack on Plaintiffs' trade secret claim, however, the Court finds it necessary to identify the actual trade secret. Plaintiffs' amended complaint restricted the trade secret to a single technology within the broader Thermodyne technology: a flat, sandwich plate created by "roll-bond" technology. Plaintiffs' amended their complaint for a second time. Plaintiffs' second amended complaint attached a disclosure—the February 1, 1996 disclosure—which expanded the definition of the trade secret from a single technology (the "roll-bond" technology) to *all* of the component parts and technologies which comprise the larger Thermodyne technology.[3]

■ In their brief, Plaintiffs assert that the trade secret is the *interrelationship* of the component parts and technologies which comprise and create the broader Thermodyne technology.[4] Defendants contend that

---

3. Plaintiffs attempted to add to the February 1, 1996 disclosure, but the Court would not allow that. Plaintiffs are clearly limited to the February 1, 1996 disclosure.

4. The Court is mindful that it is not enough for a plaintiff to point to broad areas of technology and assert that something there must have been

secret and misappropriated. *Composite Marine Propellers, Inc., v. Van Der Woude,* 962 F.2d 1263, 1266 (7th Cir.1992). The Court, however, does not believe Plaintiffs are doing that here. Indeed, Plaintiffs have pointed to the Thermodyne technology—a rather specific area of technology—and asserted that the interrelationship of

they were not on notice that Plaintiffs were claiming that the interrelationship of the component parts and technologies was the trade secret; rather, Defendants presumed Plaintiffs were claiming a separate trade secret in each, individual component part and technology. Thus, because, in Defendants' opinion, they were caught by surprise, Defendants argue that Plaintiffs cannot claim a trade secret in the interrelationship of the component parts and technologies which comprise the Thermodyne technology.

The Court finds Defendants' position unavailing.

First, the February 1, 1996 disclosure—which identifies each component of the Thermodyne technology—is entitled "Trade Secret." "Trade Secret" is singular, not plural. Also, the introductory paragraph refers to the "interrelating [of] the component parts." Granted, the disclosure refers to "various trade secrets"—which implies that there is more than one trade secret. But, a reasonable interpretation of the disclosure should have put Defendants on notice that Plaintiffs were claiming a protected trade secret in each, individual component of the Thermodyne technology and, additionally, or alternatively, in the *interrelationship* of the component parts which comprise the broader Thermodyne technology.

Furthermore, ¶ 20 of the second amended complaint identifies the February 1, 1996 disclosure, it next refers to the Thermodyne technology, and finally, it explicitly refers to the "ultimate development of *each component of the Trade Secret.*" By referring to "each component of the Trade Secret," ¶ 20 should have also put Defendants on notice that Plaintiffs may be claiming a trade secret in the interrelationship of the various component parts comprising the Thermodyne technology.

Accordingly, the trade secret is the interrelationship of the component parts and technologies which comprise the broader Thermodyne technology.[5] *See Computer*

Care, 982 F.2d at 1074 ("A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process design and operation of which in unique combination affords a competitive advantage and is a protectable trade secret.") (quoting *SmokEnders, Inc. v. Smoke No More, Inc.*, 184 U.S.P.Q. 309, 1974 WL 20234 (S.D.Fla.1974)).

Having established the trade secret, the Court now returns to the merits of Defendants' attack on Plaintiffs' trade secret.

The interrelationship of the component parts and technologies which comprise the Thermodyne technology certainly constitutes the type of information which could qualify as a trade secret under the ITSA—Defendants offer no argument to the contrary. Accordingly, Defendants' first attack on Plaintiffs' claimed trade secret focuses on the two statutory prongs: (1) whether the information comprising the Thermodyne technology is sufficiently secret to derive economic value from not being generally known and (2) whether maintaining the secrecy of the Thermodyne technology was reasonable under the circumstances.

Additionally, assuming a trade secret is present, all Defendants argue that they did not misappropriate the secret because the Temperfect oven developed for McDonald's did not utilize any of the component parts listed in the February 1, 1996 disclosure. Alternatively, Specialty Equipment (but not any of the other defendants) argues that there is no evidence that it misappropriated the trade secret.

The Court will address each aspect of Defendants' attack in turn.

### 1. *Sufficiently Secret to Derive Economic Value*

Plaintiffs submit the affidavit testimony of Thermodyne and AFTEC's President and Chief Operating Officer Vincent Tippman and Thermodyne's Project Manager Don

---

the component parts is the trade secret that was misappropriated.

**5.** Plaintiffs do not claim a trade secret in any of the individual component parts or technologies.

They claim a trade secret in only the interrelationship of those component parts and technologies.

Ross who both attest to the fact that the Thermodyne technology was not generally known in the industry, *i.e.*, it was secret.[6] Defendants contend, however, that expert testimony is necessary to establish the secrecy of the information comprising the Thermodyne technology and, since neither Tippman nor Ross are expert witnesses, Plaintiffs have not come forward with such expert evidence; thus, Defendants are entitled to summary judgment.

The Court disagrees.

■ First, simply stated, the case law cited by Defendants in support of their position that Plaintiffs must produce expert testimony attesting to the secrecy of the information does not support such a position.[7] Thus, Defendants have not come forward with any authority in support of their position.

■ Moreover, the Court does not understand why the testimony of Plaintiffs' President and CEO and Project Manager is insufficient to establish the secrecy of the information. Indeed, "the general rule is . . . that expert testimony not only is unnecessary but indeed may properly be excluded in the discretion of the trial judge. . . ." *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122 (1962). Furthermore, contrary to Defendants' assertion, non-expert witnesses may provide opinion testimony when such opinion testimony is grounded in the witnesses personal knowledge. *United States v. Saulter*, 60 F.3d 270, 276 (7th Cir.1995).

Here, as President and CEO, Tippman certainly knows a little about the technology in the industry in which AFTEC and Thermodyne compete. The same holds true for Ross, the Project Manager in charge of the Thermodyne technology. Their respective knowledge regarding the secrecy of the Thermodyne technology obviously was acquired through their personal contacts and experiences with Thermodyne and AFTEC, its customers, and its competitors.

Thus, certainly Tippman and Ross can testify as to their personal knowledge regarding the particular industry in which they compete and whether, in their opinion, the Thermodyne technology was known to others within that industry. *See United States v. Fidelity & Deposit Co. of Maryland*, 986 F.2d 1110, 1118 (7th Cir.1993) ("The opinions that he gave regarding the quality of the completed work and its value were acquired through his contact with the project. Thus, it was unnecessary for Major Ayers to be denominated as an expert witness in order for the court to accept his opinion testimony."). At trial, Defendants may of course attack the foundation underlying Tippman and Ross' opinions by cross-examination and/or presenting contradictory evidence, but that goes to the weight of their opinions; certainly, the factfinder can decide whom to believe. Accordingly, Defendants' attack on the secrecy aspect of the first prong is without merit.

The first prong has a second aspect to it: the Thermodyne technology must also be of economic value to both its owners and its competitors due to its secrecy. Defendants offer no argument that the Thermodyne technology lacked the necessary economic value to Plaintiffs and its competitors; thus, they have conceded the second aspect of the first prong for purposes of summary judgment.

Defendants' attack on the first prong of the ITSA fails.

### 2. *Reasonable Efforts to Maintain Secrecy*

■ The second prong focuses on the efforts of the owner to maintain the secrecy of the alleged trade secret. For if the owner failed to undertake reasonable efforts to prevent the trade secret from falling into the hands of competitors, the law will not provide the owner a remedy; in essence, the owner will be deemed to have abandoned the trade

---

**6.** Plaintiffs also submit the affidavit testimony of two expert witnesses. Defendants, however, ask the Court to ignore the affidavits because the opinions contained therein were not given until after the date for providing expert reports expired. The Court need not decide the issue.

**7.** Defendants cite *Harbor Software, Inc. v. Applied Sys., Inc.*, 887 F.Supp. 86, 90 (S.D.N.Y.1995), and *Weil–McLain Co., Inc. v. Andro Corp.*, 200 U.S.P.Q. 538, 544 (N.D.N.Y.1977).

secret. *See Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.,* 925 F.2d 174, 179 (7th Cir.1991). Defendants argue that because Plaintiffs sold hundreds of Thermodyne technology ovens not subject to confidentiality agreements, they essentially abandoned the secret and cannot now claim that it is a protected trade secret.

The Court disagrees.

Assuming the Thermodyne technology was capable of being readily duplicated, Defendants' position would have a lot of merit to it. *See Rockwell Graphic Sys., Inc.,* 925 F.2d at 179 ("[T]he defendant is perfectly entitled to obtain the property if the plaintiff has abandoned it by giving it away without restrictions."). President and CEO Tippman's unchallenged affidavit testimony states, however, that the Thermodyne technology was "latent and could not be discovered by simply viewing the oven." Because of the latent technology, Tippman claims that the secret interrelationship of the component parts could not be "reverse engineered"[8] in a reasonable period of time.[9]

■ Accordingly, since the Thermodyne technology was essentially incapable of being reverse engineered by a competitor, the fact that Plaintiffs may have sold the oven not subject to a confidentiality agreement is of no particular relevance. Indeed, why would there be a need for a confidentiality agreement if the Thermodyne technology was incapable of being duplicated by a competitor? The inability to reverse engineer the product makes the risk of a competitor copying the product negligible. Thus, at the very least, there is a factual dispute as to whether Plaintiffs abandoned their trade secret. *See Rockwell Graphic Sys., Inc.,* 925 F.2d at 179 ("But only in an extreme case can what is a 'reasonable' precaution be determined on a motion for summary judgment.").

Defendants' attack on the second prong of the ITSA also fails.

### 3. *Misappropriation*

Having determined that Plaintiffs' trade secret withstood Defendants' first and second attacks, the third and final attack involves the issue of whether the Thermodyne technology was misappropriated. The ITSA defines "misappropriation" in a rather lengthy and complex manner; a "misappropriation" means:

(1) acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) disclosure or use of a trade secret of a person without express or implied consent by another person who:

(A) used improper means to acquire knowledge of the trade secret; or

(B) at the time of the disclosure or use, knew or had reason to know that knowledge of the trade secret was:

(I) derived from or through a person who utilized improper means to acquire it;

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

765 ILCS 1065/2(b). As noted, all Defendants argue that no misappropriation oc-

---

**8.** Reverse engineering "is the process by which a completed product is systematically broken down into its component parts to discover the properties of the product with the goal of gaining the expertise to reproduce the product." *Christianson v. Colt Indus. Operating Corp.,* 870 F.2d 1292, 1295 n. 4 (7th Cir.1989).

**9.** Defendants argue that since Tippman is not an expert witness he cannot attest to the difficulty of reverse engineering Thermodyne technology.

The Court disagrees. Tippman can testify as to anything relevant and within his personal knowledge. Certainly, as President and CEO of Thermodyne and AFTEC, Tippman must have some knowledge as to the feasibility of reverse engineering Thermodyne technology. Defendants may attack the basis of his opinion, but that goes to weight—a matter for the factfinder to determine.

curred because the Temperfect oven did not use any of the components listed in the February 1, 1996 disclosure. Additionally, Specialty Equipment (but not the other defendants) argues that there is no evidence linking it to the alleged misappropriation. The Court will address the argument joined by all Defendants first.

The Court concludes that Defendants' argument focusing on the distinction between the component parts of each oven is misplaced. Indeed, Plaintiffs are not claiming a trade secret in the component parts, rather, they are claiming a trade secret in the *interrelationship* of the component parts. Thus, whether the Temperfect oven used the precise individual component parts listed in the February 1, 1996 disclosure as the Thermodyne oven is not really the issue. Indeed, the issue is whether the technology underlying the Temperfect oven—*the interrelationship of the component parts*—was derived (or misappropriated) from the Thermodyne technology. *See Mangren Research and Dev. Corp.*, 87 F.3d at 944.

■■■ Although a product appears to be a new or modified product, a violation of the ITSA occurs if the modification or new product was substantially derived from another's trade secret. *Id.* The fact that the Temperfect oven may have used slightly different or modified component parts to achieve the same or an improved result as compared to the Thermodyne oven is not the real concern.[10] Indeed, if those slightly different or modified component parts were "connected" or "interrelated" in a manner that was derived improperly from the Thermodyne technology, Defendants could be in trouble. Or, stated differently, if the Temperfect oven could not have been developed but for the secret information underlying the interrelatedness of the component parts comprising the Thermodyne oven, Defendants are in trouble. Accordingly, Defendants' argument that no misappropriation occurred because

10. Joseph Tippman testified that he found no functional differences between the component parts of the Thermodyne and Temperfect ovens.

11. Defendants submitted the affidavit of Thomas Franken—Taylor Company's Vice President of Engineering and supervisor of the development

the Temperfect oven uses different component parts misses the mark.[11]

■■■ Next, Specialty Equipment offers a one-paragraph argument that it cannot be liable for misappropriating the trade secret because there is no evidence that its Taylor division—the division responsible for the development of the Temperfect oven—knew or had reason to know that it acquired the Thermodyne technology by "improper means" through Liebermann.

The Court disagrees.

The ITSA defines "improper means" to include "a breach of a confidential relationship or other duty to maintain secrecy." 765 ILCS 1065/2(a). Thus, if Specialty Equipment "knew or had reason to know" that Liebermann was breaching a duty to maintain the confidentiality or secrecy of the Thermodyne technology when he revealed such, Specialty Equipment is liable for the misappropriation. *See* 765 ILCS 1065/2(b)(1) and (2). Construing all inferences in favor of Plaintiffs, the Court concludes that this issue cannot be resolved on summary judgment.

In 1989, Eugene Tippman, brother of Plaintiffs' President and CEO Vincent Tippman, terminated his employment with Plaintiffs and joined Specialty Equipment. Shortly thereafter, Plaintiffs' counsel notified Specialty Equipment that Thermodyne and AFTEC—like Specialty Equipment—were in business to research, develop, manufacture, service, and sell conduction, contact, and condensation heat cooking and holding equipment and processes. Plaintiffs further expressed concern that Specialty Equipment's hiring of Eugene Tippman would violate his restrictive covenant not to compete with Plaintiffs and that Specialty Equipment hired him to steal Plaintiffs' technology, particularly since Vince Tippman and other representatives of Thermodyne and AFTEC recently met with Specialty Equipment and McDonald's to discuss the possible purchase

and manufacture of the Temperfect oven—to attest to the differences in the component parts between the two ovens. Plaintiffs filed a motion to strike Franken's affidavit. Since the Court does not find Franken's affidavit relevant to any particular issue, the motion is denied as moot.

of Plaintiffs' technology by McDonald's and the possible license manufacture of the technology by Specialty Equipment.

Thus, based on Specialty Equipment's past history of dealing with Plaintiffs' employee, when Specialty Equipment acquired the Thermodyne technology through Liebermann—who it knew was a former employee of Plaintiffs—arguably, it had reason to know at that point that the technology was misappropriated, regardless of whether it was informed that Liebermann owned the technology. Indeed, when Specialty Equipment hired Eugene Tippman, it was informed that he was not bound by a non-competition agreement—which, of course, was not the truth.

Accordingly, resolving reasonable inferences in favor of Plaintiffs, the Court is reluctant to decide this matter on summary judgment. Defendants may raise the issue at trial after the evidence unfolds.

Plaintiffs' trade secret claim survives summary judgment.[12]

## B.   Breach of Fiduciary Duty

■ Count VI of the second amended complaint alleges that Liebermann breached the fiduciary duty owed to Plaintiffs "to act in their best interest and to refrain from self-dealing." Defendants argue that the claim is preempted by the ITSA. Plaintiffs claim that the claim is not preempted because the fiduciary duty arose out of the context of Liebermann's position as an officer and director, not out of the existence of the trade secret.

The Court agrees with Defendants.

The ITSA preempts all common law claims that are based on the misappropriation of a trade secret. 765 ILCS 1065/8; Composite Marine Propellers, Inc., v. Van Der Woude, 962 F.2d 1263, 1265 (7th Cir.1992). The is-

sue is not, as Plaintiffs contend, whether the duty arose out of the context of Liebermann's capacity as an officer or director or out of the existence of the trade secret. The issue is whether count VI alleges that Liebermann breached a duty—however that duty may have arisen—by misappropriating the Thermodyne technology. See J.H. Chapman Group, Ltd., v. Chapman, No. 95 C 7716, 1996 WL 89075 *3 (N.D.Ill. Feb. 28, 1996); Venango River Corp. v. NIPSCO Indus., Inc., No. 92 C 2412, 1994 WL 702759 *8 (N.D.Ill. Dec. 15, 1994). If yes, the claim is preempted. To the extent that the breach of fiduciary duty claim is premised on conduct other than the misappropriation of Thermodyne technology, the claim survives.

Unfortunately, count VI does not state the basis for the breach of fiduciary duty claim. It merely provides that Liebermann "willfully and maliciously" breached the fiduciary duty, but it does not specify how he breached it. True, it says that he failed to act in Plaintiffs' best interest by self-dealing, but it does not specify how Liebermann engaged in self-dealing. Nor does Plaintiffs' brief inform the Court of the underlying factual basis for count VI. Thus, based on the nature of this case, the Court must presume that count VI is premised on the misappropriation of Thermodyne technology, and not on any additional conduct. If it was premised on conduct other than the misappropriation of the trade secret, now was the time for Plaintiffs to tell the Court. As noted, Plaintiffs failed to do that. Accordingly, Defendants are granted summary judgment on the breach of the fiduciary duty claim on the ground that it is preempted by the ITSA.

## C.   Tortious Interference With Contract

Count V alleges that McDonald's and OSI tortiously interfered with Liebermann's employment contract with AFTEC.[13] Defen-

---

12.   Defendants argue that counts V (interference with contractual relations), VII (breach of contract), and VIII (conspiracy to interfere with contractual relations) are premised on the existence of a trade secret. Defendants claim that since there is no trade secret, they are entitled to summary judgment on these counts. Because the Court concluded that the trade secret claim survived summary judgment, Defendants' argu-

ment regarding counts V, VII, and VIII obviously is denied.

13.   Since only AFTEC is named as a party to Liebermann's employment contract, Defendants argued that Thermodyne could not recover under count V. Plaintiffs failed to address the issue and thus, apparently conceded it. Thus, count V is brought by only AFTEC.

dants claim that the count is barred by Indiana's two-year statute of limitations.[14] The complaint was filed in July of 1995. McDonald's and OSI argue that the statute of limitations began to run, at the latest, in September 1992 or May 1993.

The Court is not going to analyze this issue because it appears that Defendants misconstrued the claim embodied within count V. As evidenced by the reply brief, Defendants believe that count V alleges tortious interference with Liebermann's two-year *post-employment* restrictive covenant; thus, they have developed their argument accordingly. That is not what the count alleges, however. The count alleges that McDonald's and OSI tortiously interfered with Liebermann's *employment* contract, *i.e.*, the contract in existence between AFTEC and Liebermann while Liebermann was still an employee of AFTEC, not the restrictive covenant effective following his resignation. Accordingly, McDonald's and OSI's argument is misplaced, thus they are not entitled to summary judgment.

### D. *Conspiracy To Tortiously Interfere With Contract*

Count VIII alleges that McDonald's, OSI, and Liebermann conspired to induce Liebermann to breach his employment contract with AFTEC—the same employment contract discussed previously in count V. Defendants argue that this count is duplicative of count V and thus, cannot be pleaded as a separate cause of action.[15] Plaintiffs argue that the count is not duplicative of count V because it adds Liebermann as a defendant.

■ Count VIII will remain in this action with, as will be discussed below, one qualification. It is true under Illinois law that a party, *i.e.*, Liebermann, cannot be sued in tort for inducing the breach of his own contract; however, the party can be sued for conspiring with a third party who has induced the breach.[16] *Regan v. Garfield Ridge Trust & Sav. Bank,* 220 Ill.App.3d 1078, 163 Ill.Dec. 605, 615, 581 N.E.2d 759, 769 (Ill.App.2d Dist.1991). It is also true that a conspiracy claim alleging a tort as the underlying wrongful act is duplicative where the underlying tort has been pled. *See Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 453 (7th Cir.1982); *Belkow v. Celotex Corp.,* 722 F.Supp. 1547, 1550 (N.D.Ill.1989).

■ Because count VIII adds Liebermann, it is not completely identical to count V. But, importantly, the same conduct is at issue in both counts. Perhaps, in theory, counts V and VIII are "independent" causes of action since one alleges a conspiracy and adds an additional defendant. But, civil law, unlike criminal law, does not punish a conspiracy, it punishes the conspiracy only if damages ensue. Thus, certainly Plaintiffs cannot recover damages against McDonald's and OSI under *both* count V and count VIII. In other words, because the same conduct is at issue in both counts, if the factfinder concludes that McDonald's, OSI, and Liebermann conspired to induce the breach—count VIII—McDonald's and OSI logically would also be liable under count V for tortiously interfering with the contract between AFTEC and Liebermann. But, Plaintiffs are not entitled to a double recovery under both counts against McDonald's and OSI for the same wrongful conduct. Thus, count VIII will remain in this action, with the qualification that damages cannot be awarded against McDonald's and OSI under both counts— perhaps the parties will deal with this issue by "combining" the counts in the jury instructions.

---

**14.** Plaintiffs do not dispute that Indiana law governs the claim. Thus, the Court will not interfere with that concession.

**15.** Like their argument as to count V, Defendants also argue that count VIII is barred by the applicable two-year statute of limitations. Because Defendants failed to properly decipher the count embodied in count V, their argument was misplaced. Likewise, that argument is also misplaced here.

**16.** Defendants cite nothing but Illinois law in support of their argument. Plaintiffs cite Illinois and Indiana law. Since neither party argues that Indiana law is applicable, the Court will apply the law of Illinois. *Wood v. Mid–Valley Inc.,* 942 F.2d 425, 426 (7th Cir.1991) ("The operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.").

### E. *Damages*

Defendants argue that Plaintiffs' damage request for lost profits of $47.3 to $84.9 million lacks a "reasonable degree of certainty," *see Lester v. Resolution Trust Corp.*, 994 F.2d 1247, 1252 (7th Cir.1993), is not properly supported, and is too remote and speculative. This matter will be resolved at trial—Defendants can attack the basis of Plaintiffs' estimate there.

## IV. *CONCLUSION*

Based on the forgoing analysis, Defendants' motion for summary judgment is granted in part and denied in part.