**COMBINED METALS OF CHICAGO LIMITED PARTNERSHIP,**
Plaintiff,

v.

**AIRTEK, INC., Defendant.**

No. 97 C 6071.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 2, 1997.

Joel S. Feldman, Kerry Alan Miller, Sachnoff & Weaver, Ltd., Chicago, IL, for Plaintiff.

Steven P. Rouse, Perry C. Rocco, Robert A. Glaves, Menges, Mikus & Molzahn, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

This cause is before the court on plaintiff's motion to dismiss defendant's counterclaim pursuant to Federal Rule of Civil Procedure 12.

The motion is granted in part and denied in part.

## I. BACKGROUND

Plaintiff Combined Metals of Chicago Limited Partnership ("Combined Metals") is in the business of supplying and fabricating

steel to the specifications of its customers. Defendant Airtek Inc. is in the business of selling its unique design of catalytic converters. Airtek is a customer of Combined Metals.

Airtek and Combined Metals entered into an agreement whereby Combined Metals would fabricate and supply specified parts for Airtek. Airtek agreed to pay specified charges per part. The contract was to run through December 1998.

Pursuant to the contract, Airtek agreed to provide designs and blueprints for the tooling necessary for Combined Metals to fabricate the catalytic converter shells for Airtek (the "Airtek die"). Combined Metals agreed to build the Airtek die pursuant to this design. Combined Metals agreed to assume the initial costs of building the Airtek die and to amortize Airtek's payment for the cost of building the Airtek die over the term of the contract as part of the price paid by Airtek for each shell. Airtek, in turn, agreed to assist representatives of Combined Metals in the development of the Airtek die so that the Airtek die produced catalytic converter shells in accordance with Airtek's specifications.

Pursuant to the contract, Combined Metals began fabricating and supplying catalytic converter shells and other parts for Airtek. Airtek, in turn, paid for the catalytic converter shells and other parts.

Apparently, some of the shells did not fully meet Airtek's specifications. Nevertheless, Airtek paid the agreed price for the shells. Airtek's personnel assisted Combined Metals to correct the problem.

The information Airtek supplied—including the design information and development assistance—to Combined Metals regarding the Airtek die process was propriety information developed over the course of many years. The information was supplied purely for purposes of the contract between the parties; Combined Metals was not permitted to manufacture catalytic converter shells by way of the Airtek die process for any other entity.

In July of 1997, Combined Metals used the Airtek die to produce and sell catalytic converter shells to competitors of Airtek without the knowledge or authorization of Airtek. After learning of Combined Metals' conduct, Airtek terminated the contract; Airtek then requested the return of the refined and completed Airtek die and the complete design specifications. At this time, Airtek tendered payment to Combined Metals for the amounts expended in building the Airtek die which remained unpaid under the amortization schedule and for all other amounts Combined Metals claimed due and owing under the contract.

Combined Metals refused Airtek's tender and refused to return the refined and completed Airtek die and design specifications. Combined Metals continues to sell Airtek die to Airtek's competitors.

As a result of the dispute between the parties, Combined Metals filed a breach of contract action against Airtek. Airtek responded by filing a six count counterclaim against Combined Metals.[1]

## II. *MOTION TO DISMISS— LEGAL STANDARD*

■ In ruling on a motion to dismiss, the Court "must accept well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Dismissal is not granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

1. Because Airtek's counterclaim is at issue, the   facts were taken from that document.

### III. *DISCUSSION*

Airtek's six count counterclaim is premised on: (I) breach of contract; (II) breach of fiduciary duty; (III) replevin; (IV) conversion; (V) misappropriation of a trade secret under the Illinois Trade Secrets Act ("ITSA"); and (VI) deceitful conduct under the Illinois Uniform Deceptive Trade Practices Act ("UDTPA"). Combined Metals seeks to dismiss counts II through VI. Each count will be analyzed in turn.

### A. *Count II—Breach of Fiduciary Duty*

■ Count II alleges that Combined Metals owed Airtek a duty regarding the use of the Airtek die and design specifications since Airtek entrusted such information to Combined Metals solely for purposes of the contract between the parties. Because the information was used to produce and sell catalytic converters to Airtek's competitors, Airtek alleges that Combined Metals breached a fiduciary duty. Combined Metals argues that the claim is preempted by the ITSA—a violation of the act is alleged in count V.

Airtek argues that dismissal of the count based on preemption is premature. Airtek concedes that if the Airtek die and design specifications qualify as a trade secret, the fiduciary duty count is preempted. But, if the information does not qualify as a trade secret, Airtek wants to fall back on the breach of fiduciary duty allegations.

The court finds that Airtek's position, at least in theory, has some merit to it; thus, we are reluctant to dismiss the count at this point since Combined Metals has not really addressed Airtek's position.

The ITSA clearly preempts all common law claims that are based on the misappropriation of a trade secret. 765 ILCS 1065/8; *see Thermodyne Food Serv. Prod., Inc. v. McDonald's Corp.*, 940 F.Supp. 1300, 1309 (N.D.Ill.1996). By its plain language, however, the ITSA preemption provision applies only if the claim is based on the "misappropriation of a trade secret." 765 ILCS 1065/8(a). The ITSA has no effect on a claim that is not based on the "misappropriation of a trade secret." 765 ILCS 1065/8(b)(2).

Thus, in the instant case, if the Airtek die and design specifications fail to qualify as a trade secret, how could the breach of fiduciary duty count be preempted under the ITSA? Again, the ITSA preempts only counts premised on the misappropriation of a trade secret. Thus, if the Airtek die and specifications is not a trade secret or secrets, the ITSA preemption provision is inapplicable.[2] Accordingly, the breach of fiduciary duty count will remain in this action for now.[3]

### B. *Count III—Replevin*

Count III alleges that Combined Metals is unlawfully possessing the Airtek die and design specifications used to create the Airtek die. Combined Metals refuses to relinquish possession to Airtek.

Combined Metals argues that replevin is a statutory proceeding, thus, such an action must obviously comply with the applicable statute. Because the statute requires the filing of a verified pleading, *see* 735 ILCS

---

**2.** The only basis offered by Combined Metals for dismissing the fiduciary duty count is preemption. It failed to discuss whether information which does not qualify as a trade secret could nevertheless support a breach of fiduciary duty count if such information was revealed to a third party. Because the issue was not addressed by the parties, the court is reluctant to develop it any further. At least for the moment, the claim survives.

**3.** The court is highly skeptical as to whether Combined Metals owed a fiduciary duty to Airtek. Under Illinois law, parties to a contract do not owe a fiduciary duty to one another. *The Original Great Am. Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir.1992). True, a fiduciary relationship can exist when one party reposes trust and confidence in another who thereby gains a resulting influence and superiority over the first. *Oil Express Nat'l, Inc. v. Burgstone*, 958 F.Supp. 366, 370 (N.D.Ill.1997) (quoting *In re Estate of Wernick*, 151 Ill.App.3d 234, 104 Ill.Dec. 486, 493, 502 N.E.2d 1146, 1153 (1986)). A party, however, "must prove that it is heavily dependent upon the advice of another in order to establish such a duty." *Oil Express*, 958 F.Supp. at 370. How are these principles applicable in the instant case? Based on the allegations in the complaint, the court does not believe a fiduciary relationship existed. But, because the issue was ignored by Combined Metals, the court will not inquire further.

5/19–104, and Airtek failed to file such a pleading, Combined Metals argues the count must be dismissed. Airtek argues that the verification requirement is a matter of Illinois procedure which has no application in federal court.

A handful of opinions, apparently relying on FED. R. CIV. P. 64, concluded that a verified pleading must be filed consistent with the Illinois replevin statute even though the case is in federal court. *See ITT Commercial Fin. Corp. v. Tuf Racing Prod.*, No. 94 C 50403, 1995 WL 57601 (N.D.Ill. Jan. 27, 1995); *Harris Graphics Corp. v. F.C.L. Graphics, Inc.*, No. 84 C 5814, 1987 WL 13433 (N.D.Ill. June 30, 1987). To avoid a dispute, the court directs Airtek to file a verified pleading with respect to count III.

## C. *Count IV—Conversion*

■ Like count III, count IV alleges that Combined Metals is in unlawful possession of the Airtek die and design specifications. Airtek claims that it is the owner of such property and has an unconditional right to immediate possession. Combined Metals argues that the count should be dismissed because the plain, unambiguous language of the contract says that Airtek is entitled to possession at the end of 1998 only after it purchases at least 80,000 catalytic converter shells per month for two years. Since Airtek did not purchase the shells for two years, Combined Metals argues that Airtek failed to fulfill the condition precedent specified in the contract, therefore, it does not have to return the property. *See Palda v. General Dynamics Corp.*, 47 F.3d 872, 876 (7th Cir.1995) ("Where a plaintiff's cause of action arises out of a contract which is attached to the complaint as an exhibit, and such attachment shows unambiguously on its face that the relief prayed for is not merited, dismissal is both justified and appropriate.").

The court will not dismiss the count at this time. The "contract" submitted by Combined Metals—which consists of a letter to Airtek—simply states that "Airtek will assume ownership of the tooling at the end of 1998." The context of the letter is one which clearly contemplates a relationship between the parties that terminates at the end of

1998—that is why the letter states that Airtek will regain ownership of the property at the end of 1998. There is no provision, however, which deals with the situation presently before the court: the termination of the relationship before the end of 1998. The letter doesn't say that if the contract is terminated prior to the end of 1998, Combined Metals is entitled to keep the property. Accordingly, Combined Metals' argument is without merit.

## D. *Count V—ITSA*

Count V alleges that the Airtek die and the knowledge of producing the catalytic converter shells used to build and develop the Airtek die constitutes a trade secret within the meaning of the ITSA. The count further alleges that Combined Metals misappropriated the trade secret by utilizing the Airtek die and design specifications to produce and sell parts to competitors. Combined Metals seeks to dismiss the count for two independent reasons.

■ First, Combined Metals argues that Airtek failed to plead the elements required to state an ITSA violation—namely, that it derives value from the alleged trade secret; that the information underlying the trade secret is not generally known to the relevant public; and that it took steps to maintain the secrecy of the information. *See* 765 ILCS 1065/2(d). In response, Airtek defers to "notice pleading standards."

The court agrees with Airtek.

By definition, a trade secret is information that "is sufficiently secret to derive economic value ... from not being generally known to other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d)(1) and (2). Thus, by claiming that it possesses a trade secret, Airtek implicitly pleads that it derives economic value from the information, that the information is not generally known to the public, and that it took steps to maintain the secrecy of the information. Airtek has stated a claim under the ITSA.

Next, Combined Metals argues that Airtek fails to identify the trade secret. The counterclaim does, however, state that the trade secret is the Airtek die and the knowledge of producing the catalytic converter shells used to build and develop the die—it appears that there are two trade secrets here. Once again, Airtek defers to "notice pleading standards."

■ The court, however, has a problem here. In a recent trade secret case—a case cited by both parties—before this court, the defendants were confused at the time of summary judgment as to the alleged trade secret. *See Thermodyne,* 940 F.Supp. at 1304–05. The court will not entertain such a dispute at such a late stage in the proceeding again. In the counterclaim, Airtek claims that the trade secret is: (1) the Airtek die itself and additionally (2) the knowledge of producing the catalytic converter shells used to build and develop the Airtek die. Thus, as noted, there appear to be two trade secrets here—the die and the knowledge of producing the catalytic converter shells.

Airtek will be held to those trade secrets, *i.e.,* it will not be permitted to change or narrow them as the case progresses. If there is a more specific technology underlying the die or the knowledge of producing the catalytic converter shells that Airtek desires to claim as a trade secret, Airtek better put Combined Metals on notice of such technology now (by filing an amended counterclaim) or forfeit the right to claim such technology as a trade secret at a later time in this case. Moreover, the court tends to agree with Combined Metals that the alleged trade secret regarding the knowledge of producing the catalytic converter shells is too broad.[4] *See Composite Marine Propellers, Inc. v. Van Der Woude,* 962 F.2d 1263, 1266 (7th Cir.1992). Accordingly, the court expects an amended counterclaim from Airtek identifying specific, concrete secrets underlying the process of producing the catalytic converters.

### E.   *Count VI—UDTPA*

■ Count VI is premised on a violation of the UDTPA. Airtek alleges that Combined Metals' conduct in producing and selling catalytic converter shells made from the Airtek die to competitors of Airtek created a likelihood of confusion in the market place as to whether catalytic converter shells manufactured by Airtek's competitors are in fact manufactured by Airtek. Combined Metals seeks to dismiss the count on the ground that there are no allegations that the catalytic converter shells contain any kind of a distinctive mark which identify the shells as an Airtek product. The court agrees.

Airtek's UDTPA claim is premised on violations of § 2(2) and § 2(12). *See* 815 ILCS 510/2(2) and (12). Those subsections provide that:

A person engages in a deceptive trade practice when, in the course of his business, vocation or occupation, he:

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;

(12) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

To create the requisite "likelihood of confusion" the catalytic converter shells at issue must contain some form of a distinctive "mark" which identifies them as an Airtek product. *See* 815 ILCS 510/2, Commentary of National Conference of Commissioners on Uniform State Laws, subsection (2); *see also, North American Bear Co., Inc. v. Carson Pirie Scott & Co.,* No. 91 C 4550, 1991 WL 259031 *5 (N.D.Ill. Nov. 27, 1991) ("Likelihood of confusion exists when the defendant's use of a deceptive trade name, trademark, or other distinctive symbol is likely to confuse or mislead customers as to the source or origin of the product.").

Otherwise, how could the relevant public be likely confused as to the source, sponsorship, approval, or certification of the shells? If there is nothing distinctive about the shells

---

**4.** Combined Metals offers an argument as to why the Airtek die cannot possibly qualify as a trade secret under the ITSA. That argument is for a summary judgment motion, not a motion to dismiss.

which identify them as Airtek products, Combined Metals could not have created a likelihood of confusion as to whether the shells come from Airtek's competitors or Airtek. Accordingly, count VI is dismissed without prejudice.[5]

## IV. CONCLUSION

Airtek is directed to file an amended counterclaim consistent with this opinion.

Count III is dismissed without prejudice; Airtek should file a verified pleading regarding this count.

Count V is dismissed in part without prejudice; the court directs Airtek to plead more specifically regarding the allegation that the knowledge of producing the catalytic converter shells is a trade secret. When amending its counterclaim regarding count V, the court reminds Airtek to heed the court's warning concerning the alleged trade secret; Airtekn will not be permitted to claim a more specific technology or process as a trade secret at a later time in this proceeding—the time to do it is now; otherwise it will be stuck with what is plead.

Finally, count VI is dismissed without prejudice.

---

**5.** Combined Metals also argues that count VI is preempted by the ITSA. For the same reason that the breach of fiduciary duty count was not preempted by the ITSA, count VI is also not preempted by the ITSA.