ST. FRANCIS SAVINGS & LOAN ASSOCIATION, Respondent, v. HEARTHSIDE HOMES, INC., and others, Defendants: BURROUGHS, Trustee, Appellant.

*No. 227. Submitted under sec. (Rule) 251.54 September 10, 1974.— Decided October 1, 1974.*

(Also reported in 221 N. W. 2d 840.)

76

The cause was submitted for the appellant on the briefs of *R. Arthur Ludwig* and *Ludwig & Shlimovitz,* all of Milwaukee.

The cause was submitted for the respondent on the brief of *Joseph F. Schoendorf* and *Schoendorf & Schoendorf,* attorneys, and *John A. Lynch* of counsel, all of Milwaukee.

WILKIE, C. J.   The sole issue on this appeal is whether the counterclaim states facts sufficient to constitute a cause of action.

The Trustee argues that the counterclaim can be read to state one or more of three different causes of action:

(1) negligence, (2) breach of contract, or (3) tortious interference with a principal-agent relationship. In our judgment the counterclaim does not state a cause of action under any of the three theories, although on re-pleading a cause of action for tortious interference with a principal-agent relationship can undoubtedly be upheld as against demurrer.

### Negligence.

There is no basis for finding a cause of action in negligence. The counterclaim does not allege that the Association paid $5,000 to the Christiansens out of a lack of any due care, or that the Association was negligent in supervising the Christiansens' use of the money, or, indeed, that the Association even had any duty of supervision after disbursing the money.

### Breach of contract.

Although a savings and loan association, like the plaintiff here, may be affirmatively liable for the damages proximately caused by failure to disburse the proceeds of a loan in accordance with a loan contract,[2] there are no allegations in this counterclaim which would establish a breach of contract action. It is nowhere stated that the loan contract itself specified that the money was only to be used for construction purposes or that the payment to the Christiansens violated any particular contract provision. To state a contract cause of action a pleading must, at a minimum, specifically allege the provision of

[2] *Hardscrabble Ski Area v. First Nat. Bank* (1969), 42 Wis. 2d 334, 344, 166 N. W. 2d 191. *See also:* 7 Am. Jur., *Banks*, p. 468, sec. 646.

the contract at issue and its breach by the defendant.[3] The counterclaim here contains no such allegations.

*Tortious Interference with Principal-Agent Relationship.*

Paragraph 5 of the counterclaim alleges that the Christiansens, as fiduciaries and agents, violated a "duty of undivided loyalty" owed to Hearthside. The allegations of the counterclaim and admissions in the answer, plus reasonable inferences drawn therefrom, indicate that the Christiansens used money loaned to the principal and intended for construction purposes, for their own personal use and benefit.

Such allegations are sufficient to state a cause of action between principal and agent for breach of duty. A general statement that a party is an agent of another sufficiently alleges the existence of the agency relationship,[4] and where an agent diverts to his own use or benefit money or property intended for the use or benefit of his principal, the agent becomes liable in tort.[5]

The precise issue here however is whether, under the allegations of the counterclaim, a third party—the Association—may also be liable for the agent's alleged breach of duty. Under the 1926 ruling in *Coakley v. Degner,*[6] which is this court's most recent decision that is in point, no cause of action is stated for a tortious interference

[3] *See* 17A C. J. S., *Contracts,* p. 1029, sec. 533. *See also: Peters v. Peters Auto Sales, Inc.* (1967), 37 Wis. 2d 346, 350, 155 N. W. 2d 85.

[4] *Mercantile Contract Purchase Corp. v. Melnick* (1970), 47 Wis. 2d 580, 584, 177 N. W. 2d 858; *Herro v. Wisconsin Federal Surplus Property Development Corp.* (1969), 42 Wis. 2d 87, 104, 105, 166 N. W. 2d 433.

[5] *Degner v. Moncel* (1959), 6 Wis. 2d 163, 167, 93 N. W. 2d 857; *Shevel v. Warter* (1950), 256 Wis. 503, 41 N. W. 2d 603; Restatement, 2 *Agency* 2d, pp. 185, 203, 228, 241, secs. 382, 388, 398, 402 (1).

[6] (1926), 191 Wis. 170, 210 N. W. 359.

with a principal-agent relationship. In *Coakley* the defendants hired the plaintiffs' moving company to transport furniture from Milwaukee to an island in frozen Nagawicka Lake during the month of March. Despite knowledge that plaintiffs' truck driver had been instructed not to drive on the ice, defendants successfully urged the driver to make the crossing and assured him the ice was safe. The truck stuck in an ice fishing hole and the driver was forced to leave the truck on the lake. Darkness descended, and by morning the truck had sunk to the bottom in 70 feet of water. On appeal this court held defendants not liable for the damage despite acknowledging that defendants had intentionally induced breach of the agent's duty and, therefore, proximately caused the damage. The court specifically held that defendants must also have acted maliciously and profited at the expense of plaintiffs. We said:

"One is liable to respond in damages who maliciously induces the agent of another to betray the trust imposed in him by his principal for the purpose of securing some advantage to himself at the expense of the principal. *Singer S. M. Co. v. Lang,* 186 Wis. 530, [536], 203 N. W. 399." [7]

No evidence was found that defendants profited or acted maliciously, and the court refused to infer these elements since defendants were also damaged when the truck sank:

". . . Manifestly if the condition of the ice was such as to endanger the truck, it also subjected the defendants' furniture to the same danger." [8]

Here, the counterclaim does not state the cause of action defined in *Coakley.* There is no allegation that the Association acted with malice, or profited at the expense of Hearthside. To the contrary, it appears that the Association suffered. Hearthside's financial diffi-

---

[7] *Id.* at page 172.
[8] *Id.*

culties, perhaps caused in part by the alleged misappropriation of money by the Christiansens, led to default on the loan. Thus, under the current Wisconsin law as set forth in *Coakley,* the counterclaim is insufficient to state a cause of action for tortious interference with the principal-agent relationship.

We here adopt sec. 312 of the Restatement of *Agency,* 2d, however, and under that section it is possible that a cause of action could be stated by this counterclaiming defendant. Sec. 312 of Restatement, 2 *Agency* 2d provides:

"A person who, without being privileged to do so, intentionally causes or assists an agent to violate a duty to his principal is subject to liability to the principal." [9]

Under this provision, intention to cause or assist a violation of duty is the controlling consideration, not malice or personal profit.

Adoption of this section of the Restatement of *Agency* 2d is consistent with this court's adoption of sec. 766 of the Restatement of *Torts,* pertaining to tortious inducement of breach of contract:

". . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to
"(a) perform a contract with another, . . . is liable to the other for the harm caused thereby." [10]

These provisions are not precisely identical; the latter requires the tortious intermeddler to actually cause the breach, while under the former, intentional assistance is enough. However, they do pertain to similar conduct,[11]

---

[9] Restatement, 2 *Agency* 2d, p. 50, sec. 312.

[10] Restatement, 4 *Torts,* p. 49, sec. 766. *See Lorenz v. Dreske* (1974), 62 Wis. 2d 273, 286, 214 N. W. 2d 753; and *Wisconsin Power & Light Co. v. Gerke* (1963), 20 Wis. 2d 181, 186, 187, 121 N. W. 2d 912.

[11] Restatement, 2 *Agency* 2d, sec. 312, Comment *a,* at page 50, states: "The rule stated in this Section is a special application

and unlike *Coakley*, neither requires a showing that the tort-feasor acted with malice [12] or personally profited.

The counterclaim as it now stands, however, is too bare in our view to state with particularity a cause of action even under the theory of sec. 312. Details about how the money was used by the Christiansens, in breach of their principal-agent duties, and how the Association intentionally assisted such breach, must be alleged if possible on repleading in order that a counterclaim will stand as against the plaintiff Association's demurrer.

*By the Court.*—Order affirmed and cause remanded for further proceedings not inconsistent with this opinion. No costs to either party on this appeal.

---

of the more general rule that, unless there is a privilege to do so, a person is under a duty to refrain from intentionally causing another to violate a duty to a third. The general principles and their applications are stated in the Restatement of Torts, Sections 757–812 and 871. Only such statements are herein made as are peculiarly applicable to the interference by a third person with the relations between the principal and agent."

*See also: Singer Sewing Machine Co. v. Lang* (1925), 186 Wis. 530, 536, 203 N. W. 399, where the court first announced the tortious nature of inducing breach of a principal agent duty; the court analogized from the tort of inducing breach of contract: ". . . This court holds that one who maliciously induces another to breach a contract with a third person is liable to such third person for the damages resulting from such breach. *Northern Wis. Co-op. Tobacco Pool v. Bekkedal* 182 Wis. 571 (197 N. W. 936), and cases cited at p. 581. With far greater reason must it be held that one who induces an agent to betray the trust reposed in him by his principal must respond in damages which the principal sustains thereby."

[12] As to the requirement of malice, a Note to Comment *m*, Restatement, 4 *Torts*, sec. 766, states, at page 62: "There are frequent expressions in judicial opinions that 'malice' is requisite for liability in the cases treated in this Section. But the context and course of decision make it clear that what is meant is not malice in the sense of ill will but merely purposeful interference without justification. Malicious conduct may be an obvious type of such interference, but it is only one of several types."

See also: E. L. Husting Co. v. Coca Cola Co. (1931), 205 Wis. 356, 365, 237 N. W. 85, 238 N. W. 626 ("the definition of 'malice' has been broadened to include unjustified interference with the contractual relationship"). Note, however, that in *Coakley v. Degner, supra,* footnote 6, 191 Wis. at page 172, the court equates malice with bad faith conduct.

See also: Sec. 112.01 (3), Stats., which could relieve the Association of liability in this case, depending on the facts developed at trial: "A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary." The Association would, however, have to assert this statute as an affirmative defense to the counterclaim.