BURBANK GREASE SERVICES, LLC,
Plaintiff-Appellant-Petitioner,

v.

Larry SOKOLOWSKI and United Grease LLC and
United Liquid Waste Recycling, Inc.,
Defendants-Respondents.

Supreme Court

*No. 2004AP468. Oral argument December 2, 2005.
—Decided July 13, 2006.*

2006 WI 103

(Also reported in 717 N.W.2d 781.)

277

278

For the plaintiff-appellant-petitioner there were briefs by *Michael L. Hermes* and *Metzler and Hager, S.C.,* Green Bay, and oral argument by *David J. Sisson.*

For the defendant-respondent Larry Sokolowski there was a brief by *Stephen J. Eisenberg, Pam M. Baumgartner,* and *Eisenberg Law Offices, S.C.,* Madison, and oral argument by *Stephen J. Eisenberg.*

For the defendants-respondents United Grease LLC and United Liquid Waste Recycling, Inc., there was a brief by *David E. McFarlane, Mark H.T. Fuhrman, Sheila M. Sullivan,* and *Bell, Gierhart & Moore, S.C.,* Madison, and oral argument by *Mark H.T. Fuhrman.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case requires us to determine whether the trade secret statute, Wis. Stat. § 134.90 (2003–04),[1] precludes all civil law remedies based on the misappropriation of confidential information that falls outside of the statutory definition of a trade secret. We also determine whether Wis. Stat. § 943.70(2) criminalizes the subsequent misappropriation of confidential information when the information was lawfully obtained. We conclude that § 134.90(6)(a) does not preclude all other civil remedies based on the misappropriation of confidential information, if the information does not meet the statutory definition of a trade secret under § 134.90(1)(c). Accordingly, in the case before us, § 134.90(6)(b)2 permits civil tort remedies based on the misappropriation of confidential information. Therefore, because the plaintiff's complaint stated other common law claims and because material facts relevant to those claims are disputed, it was error to dismiss the complaint. However, we also conclude that § 943.70(2) does not apply when an individual lawfully obtains computer-stored confidential information, but later misappropriates it. Accordingly, the plaintiff's § 943.70(2) claim was properly dismissed on summary judgment. Accordingly, we affirm in part; reverse in part and remand to the circuit court for further proceedings.

---

[1] All subsequent references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

## I. BACKGROUND[2]

¶ 2. Burbank Grease Services, LLC (Burbank) is engaged in the business of collecting and processing used restaurant fry grease, trap grease, and industrial grease. In 2001, Burbank had approximately 11,250 customers in Wisconsin and 3,200 in surrounding states. About 65% of Burbank's customers were restaurants; the rest were grease trap and industrial customers.

¶ 3. Larry Sokolowski (Sokolowski) was employed by Burbank in various management positions from November 1997 to April 2001. When he resigned from Burbank, Sokolowski was territory manager. His duties in that position included the oversight of sales people, the management of customer relations with industrial clients and the preparation of spreadsheets and billings for Burbank's accountant.

¶ 4. Burbank distributed a code of conduct in regard to confidential information that it required all managers to acknowledge and to follow. The code provided that "[n]o . . . employee shall disclose any confidential or privileged information to any person within the Company who does not have a need to know or to any outside individual or organization except as required in the normal course of business." Sokolowski was aware of this provision.

¶ 5. All Burbank employees received an employee handbook that contained a provision requiring non-disclosure of trade secret and confidential business information. The handbook provided that disclosure could result in disciplinary action, including termina-

---

[2] In order to resolve the legal issues presented by this review, we take the following facts derived from the pleadings and affidavits as true, but only for the purpose of our review. *See Prah v. Maretti,* 108 Wis. 2d 223, 229, 321 N.W.2d 182 (1982).

tion. The handbook provision also stated that employees might be required to sign a non-disclosure agreement as a condition of employment. Sokolowski acknowledged in writing that he received and understood this provision.[3]

¶ 6. On April 15, 2001, Sokolowski signed an employment agreement with United Liquid Waste Recycling, Inc. (United Liquid), and on April 20, 2001, he

---

[3] The non-disclosure section of the employee handbook reads as follows:

> The protection of confidential business information and trade secrets is vital to the interests and the success of [Burbank]. Such confidential information includes, but is not limited to, the following examples:
>
> - computer processes
>
> - computer programs and codes
>
> - customer lists
>
> - financial information
>
> - marketing strategies
>
> - new materials research
>
> - pending projects and proposals
>
> - proprietary production processes
>
> - research and development strategies
>
> - technological data
>
> - technological prototypes
>
> Employees who are exposed to confidential information may be required to sign a non-disclosure agreement as a condition of employment. Employees who improperly use or disclose trade secrets or confidential business information will be subject to disciplinary action, up to and including termination of employment and legal action, even if they do not actually benefit from the disclosed information.

283

resigned from Burbank. Prior to resigning, he obtained confidential information from Burbank's computer system. He took the following information with him when he left: (1) a hardcopy of a list of Burbank's grease trap customers, containing about 2,400 names, phone numbers and addresses, contact persons, total gallons for each grease trap, and pricing Burbank had applied to each customer; (2) a spreadsheet of Burbank's industrial clients that showed the amount of grease collected from each customer times the market rate less a processing fee, which determined what Burbank would pay the customer for the material collected;[4] and (3) a computerized spreadsheet showing the amount of collections and revenues per customer for certain drivers, organized by the driver's route. Sokolowski took the information with him when he left Burbank's employ, without Burbank's permission and with the knowledge that Burbank considered all of this information confidential.

¶ 7. On April 25, 2001, Sokolowski began working for United Liquid as a sales and customer service representative. United Liquid provided waste and cake sludge hauling and glass, metal, and plastic recycling services to industrial, municipal, and commercial clients throughout Wisconsin. Sokolowski and United Liquid later formed United Grease, LLC (United Grease), which began collecting fry grease, trap grease and industrial grease in direct competition with Burbank.

¶ 8. Sokolowski had Burbank's confidential information entered into United Liquid's computer system. Sokolowski used this confidential information to solicit customers for United Grease.

---

[4] Burbank points out in its briefs that this was a specialized pricing/payment formula based on the customer's grease yield percentage after Burbank's processing costs, and that no other competitor possessed this information, nor was it available through proper means.

¶ 9. Subsequently, United Grease acquired about 80 fry grease customers, which were mostly former Burbank customers, and 157 grease trap customers, the majority of which were former Burbank customers. United Grease also managed to acquire one or two of Burbank's former industrial customers.

¶ 10. When Burbank became aware that Sokolowski was soliciting its customers, it filed this action alleging that Sokolowski misappropriated Burbank's trade secrets in violation of Wis. Stat. § 134.90; breached his duty of loyalty to Burbank, which he owed as Burbank's agent; intentionally interfered with Burbank's business relationships; and committed computer crimes in violation of Wis. Stat. § 943.70(2). The complaint also alleged that United Grease and United Liquid had aided and abetted Sokolowski in the breach of his duty of loyalty; had conspired to deprive Burbank of its customers; and had intentionally interfered with Burbank's business relationships.

¶ 11. Both parties filed motions for summary judgment. The circuit court granted the defendants' motion and dismissed the complaint. The circuit court[5] concluded that Burbank's confidential information was not protected by Wis. Stat. § 134.90(6), the trade secret statute, because the information did not meet the statutory definition of a trade secret. The circuit court also concluded that by enacting § 134.90(6), all common law tort claims based on the misappropriation of confidential information were precluded, except those that involved information that met the statutory definition of a trade secret. And further, the court concluded that there had been no computer crime under Wis. Stat.

---

[5] The Honorable Diane M. Nicks, circuit court judge for Dane County, presided.

§ 943.70(2) because Sokolowski was authorized to obtain the computer-stored information when he obtained it.

¶ 12. Burbank appealed the circuit court's grant of summary judgment and the court of appeals affirmed. We review that decision.

## II. DISCUSSION

### A. Standard of Review

¶ 13. This case requires us to review summary judgment dismissing Burbank's complaint. When we do so, we independently apply the same methodology as the circuit court. *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–17, 401 N.W.2d 816 (1987). The summary judgment awarded here is driven by the interpretation of Wis. Stat. § 134.90(6) and Wis. Stat. § 943.70. Statutory construction or a statute's application to a set of facts is a question of law that we decide independently, owing no deference to the decisions of other courts. *Minuteman, Inc. v. Alexander,* 147 Wis. 2d 842, 853, 434 N.W.2d 773 (1989).

### B. Statutory Construction

#### 1. General principles

¶ 14. "[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect." *State ex rel. Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. We look first at the plain language of the statute, taking into consideration the context in which the provision under consideration is used. *Id.,* ¶¶ 45–46. "Statutory language is

given its common, ordinary, and accepted meaning." *Id.,* ¶ 45. The scope, history and purpose of the statute are also "relevant to a plain-meaning interpretation of an unambiguous statute as long as [they] are ascertainable from the text and structure of the statute itself." *Id.,* ¶ 48. When a word of common usage is not defined in a statute, we may turn to a dictionary to ascertain its meaning. *See Garcia v. Mazda Motor of Am., Inc.,* 2004 WI 93, ¶ 14, 273 Wis. 2d 612, 682 N.W.2d 365. If the language of a statute is ambiguous, we may consider extrinsic sources, such as legislative history, to aid in our analysis. *Kalal,* 271 Wis. 2d 633, ¶ 50. However, we may consult extrinsic sources "to confirm or verify a plain-meaning interpretation." *Id.,* ¶ 51.

2. Wisconsin Stat. § 134.90

¶ 15. Wisconsin Stat. § 134.90(1)(c) defines the term "trade secret" and § 134.90(2) prohibits any person from misappropriating a trade secret through a variety of specific acts set forth in the statute. The statute also permits courts to grant injunctions, § 134.90(3), and to award damages in addition to, or in lieu of, injunctive relief, § 134.90(4).

¶ 16. Previous judicial decisions that Burbank has not appealed have concluded, for purposes of this case, that Burbank's confidential information Sokolowski, United Grease and United Liquid used did not qualify under Wis. Stat. § 134.90(1)(c) as trade secrets. Accordingly, we do not decide whether the confidential information that Sokolowski took from Burbank would qualify as trade secrets under § 134.90(1)(c). Instead, we are asked to construe subsec. (6) of § 134.90 to determine if it precludes Burbank's other claims for relief, even though what was taken did not qualify as trade secrets.

¶ 17. Wisconsin Stat. § 134.90(6) states:

Effect on other laws. (a) Except as provided in par. (b), this section displaces conflicting tort law, restitutionary law and any other law of this state providing a civil remedy for misappropriation of a trade secret.

(b) This section does not affect any of the following:

1. Any contractual remedy, whether or not based upon misappropriation of a trade secret.

2. Any civil remedy not based upon misappropriation of a trade secret.

3. Any criminal remedy, whether or not based upon misappropriation of a trade secret.

¶ 18. Burbank argues that the statutory language explicitly preserved its common law claims, because those claims were not based on the misappropriation of a trade secret and therefore, fit squarely within Wis. Stat. § 134.90(6)(b)2. The defendants, on the other hand, urge us to adopt the court of appeals ruling, that all of Burbank's claims are pre-empted by § 134.90(6)(a). They argue that the legislative intent underlying the statute was to encompass all claims based upon confidential business information, even when a claim does not allege or depend on determining that the confidential information met the statutory definition of a trade secret.

¶ 19. We begin our statutory construction by examining the plain language of the statute. *Kalal,* 271 Wis. 2d 633, ¶¶ 45–46. When we examine the language of para. (6)(a) and subd. (6)(b)2 in the context of Wis. Stat. § 134.90, we first focus on the term "trade secret." This is because the "effect on other laws" provision, para. (6)(a), specifically states that the statute displaces "any other law of this state providing a civil remedy for misappropriation of a *trade secret.*" (Emphasis added.)

288

"Trade secret" is defined in para. (1)(c) of § 134.90, and as we explained above, Burbank has not appealed the conclusion that its confidential information that Sokolowski took was not a trade secret, as defined in § 134.90(1)(c).

¶ 20. Accordingly, the plain language of Wis. Stat. § 134.90(6)(a) appears to have the effect of making § 134.90 the exclusive remedy for civil claims based on the misappropriation of a statutorily-defined trade secret. However, what is at issue here is whether para. (6)(a) precludes Burbank's other tort claims, which were not based on the theory that the confidential information Sokolowski took constituted a trade secret, as defined in § 134.90(1)(c).

¶ 21. Wisconsin Stat. § 134.90(6)(a) prefaces its preclusive language with "[e]xcept as provided in par. (b)," indicating that despite the expressed intent of one paragraph of the trade secret statute to displace other remedies for trade secret misappropriation, another paragraph of the statute expressly states that there remain claims based on the misappropriation of confidential information that will not be affected by § 134.90. For example, subd. (6)(b)2 provides that subsec. (6) does not affect "[a]ny civil remedy *not based upon* misappropriation of a trade secret." (Emphasis added.)

¶ 22. Focusing on the common word "any" in Wis. Stat. § 134.90(6)(b)2, we use a dictionary definition for assistance. *See Garcia,* 273 Wis. 2d 612, ¶ 14. "Any" is defined as: "one or some indiscriminately of whatever kind"; and "unmeasured or unlimited in amount, number, or extent." *Webster's New Collegiate Dictionary* 51 (5th ed. 1977). "Any" is a very broad term. Accordingly, we conclude that its use evinces a broad range of civil remedies that are not precluded by para. (6)(a). Subdivision (6)(b)2 excepts from the class of unaffected

remedies only those remedies based on the misappropriation of a statutorily-defined trade secret. It leaves available all other remaining civil remedies for the protection of confidential information.

■■■■■

¶ 23. The statutory term "civil remedy" is a technical term that is given its technical, legal meaning. *Kalal,* 271 Wis. 2d 633, ¶ 45. *Black's Law Dictionary* aids us in this regard. It defines "remedy" as:

> The means of enforcing a right or preventing or redressing a wrong; legal or equitable relief.

*Black's Law Dictionary* 1320 (8th ed. 1990). We conclude the sum effect of the statutory terms is that civil claims for relief are not abrogated by Wis. Stat. § 134.90(6)(b)2, with the exception of those civil tort claims that require the use of a statutorily-defined trade secret. It follows that all other types of civil tort claims that Burbank may assert in regard to the misuse of its confidential information remain available to it under the directive of § 134.90(6)(b)2.

¶ 24. Furthermore, to adopt the court of appeals' view, that para. (6)(a) in combination with subd. (6)(b)2 precludes all of Burbank's common law claims, would require us to read into the statute the following italicized language:

> (b) This section does not affect any of the following:
>
> . . .
>
> 2. Any civil remedy not based upon misappropriation of a trade secret *and not based on confidential business information.*[6]

---

[6] The relevant language of the court of appeals decision supports our conclusion that it has the effect of adding language to the statute:

However, the legislature did not choose the language employed by the court of appeals, and we are not free to add it.

¶ 25. We discussed our obligation to use restraint in adding words to those chosen by the legislature in *State v. Hall*, 207 Wis. 2d 54, 557 N.W.2d 778 (1997), where we quoted with approval, the United States Supreme Court's refusal to add language to an unambiguous statute:

> Statutes should be construed to avoid constitutional questions, but this interpretative canon is not license for the judiciary to rewrite language enacted by the legislature. Any other conclusion, while purporting to be an exercise in judicial restraint, would trench upon the legislative powers vested in Congress .... Proper respect for those powers implies that "[s]tatutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."

*Id.* at 83–84 (quoting *United States v. Albertini*, 472 U.S. 675, 680 (1985)). To adopt the court of appeals' interpretation, as the defendants advocate, would require us to expressly contradict the principle that it is the legislature that chooses the words of a statute.

¶ 26. The defendants also urge us to conclude that subsec. (7) of Wis. Stat. § 134.90, the uniformity

---

We construe § 134.90(6) to preempt common law claims for unauthorized use of confidential information that does not meet the statutory definition of a trade secret, *as well as common law claims, however denominated,* that are based solely on allegations or evidence either of misappropriation of a trade secret in violation of § 134.90(1) and (2) *or unauthorized use of confidential information.*

*Burbank Grease Svcs., LLC v. Sokolowski*, 2005 WI App 28, ¶ 37, 278 Wis. 2d 698, 693 N.W.2d 89 (emphasis added).

clause, supports the court of appeals' interpretation. Subsection (7) states:

> Uniformity of application and construction. This section shall be applied and construed to make uniform the law relating to misappropriation of trade secrets among states enacting substantially identical laws.

The plain language of subsec. (7) relates only to the "misappropriation of trade secrets," which, according to our analysis of subd. (6)(b)2 and the plain meaning of subsec. (7), requires a statutorily-defined trade secret as a prerequisite. Our construction in this regard is in accord with the promotion of uniformity by subsec. (7), because the statutory definition of a trade secret is made uniform throughout the states enacting a version of the Uniform Trade Secrets Act (UTSA), and our application of that definition has been in accord with other UTSA jurisdictions. *See, e.g., Minuteman,* 147 Wis. 2d at 851; *Electro-Craft Corp. v. Controlled Motion, Inc.,* 332 N.W.2d 890, 899 (Minn. 1983); *Convolve, Inc. v. Compaq Computer Corp.,* No. 00CV5141 (GBD), 2006 WL 839022, at *5–6 (S.D.N.Y. March 31, 2006).

¶ 27. We discussed the purpose and effect of Wis. Stat. § 134.90 four years after its enactment, in *Minuteman.* We held that the 1986 passage of the Wisconsin version of the UTSA displaced the previously controlling common law definition of a trade secret in *Corroon & Black-Rutters & Roberts, Inc. v. Hosch,* 109 Wis. 2d 290, 325 N.W.2d 883 (1982).[7] *Minuteman,* 147 Wis. 2d at

---

[7] In *Corroon & Black-Rutters & Roberts, Inc. v. Hosch,* 109 Wis. 2d 290, 325 N.W.2d 883 (1982), we held that an insurance agency's customer list and expiration list were not trade secrets. We followed previous common law on trade secret determinations, applying the six factors of Restatement of the Law of Torts, Vol. 4, § 757 cmt. b (1939), as the test for determining

851–52. However, we also reasoned that the definition used in *Corroon* of a trade secret remained "helpful." *Id.* at 853. We did not address § 134.90(6)(b)2 in *Minuteman* because it was not relevant to the questions presented.

¶ 28. Our analysis of the plain language of Wis. Stat. § 134.90(6)(b)2 results in only one reasonable interpretation; therefore, the statute is not ambiguous. Our interpretive inquiry would normally stop here. *Kalal,* 271 Wis. 2d 633, ¶ 45. However, we also note that we can use legislative history to confirm a plain-meaning interpretation. *Id.,* ¶ 50. The legislative history does so here.

¶ 29. The Special Committee on the UTSA, established and directed by the Legislative Council to investigate the desirability of incorporating uniform trade secret protections into state law, issued a 1984 Staff Brief that explained the various implications of the potential adoption of the UTSA. That report cited comments of the UTSA Commissioners to explain the purpose of its effect on other law:

> Section 7(a) of the [Uniform Trade Secrets] Act states that it "displaces conflicting tort, restitutionary, and other law of [the enacting state] pertaining to civil liability for misappropriation of a trade secret." Section 7(b) provides that the law does not affect contractual or other civil liability or relief that is not based on misappropriation of a trade secret or criminal liability for misappropriation of a trade secret.

> The Commissioners' Comments state that the [Uniform Trade Secrets] Act *is not intended to be a*

---

whether the information met the criteria for classification as a trade secret. *Corroon,* 109 Wis. 2d at 295. This definition was changed by the passage of Wis. Stat. § 134.90. *Minuteman, Inc. v. Alexander,* 147 Wis. 2d 842, 851, 434 N.W.2d 773 (1989).

*comprehensive remedy.* According to the Comment, it applies to duties imposed by law in order to protect competitively significant secret information. The Act does not apply to duties voluntarily assumed through an express or an implied-in-fact contract. For example, the enforceability of covenants not to disclose trade secrets, and covenants not to compete that are intended to protect trade secrets, are governed by other law. Also, the Act does not apply to duties imposed by law which are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal.

Wis. Legis. Council, *Staff Brief 84–9, Uniform Trade Secrets Act,* at 8 (Aug. 14, 1984) (emphasis added). The commissioners' comment that the UTSA was not enacted to be the exclusive remedy for misappropriation of confidential information is a confirmation that our plain meaning analysis accurately interprets Wis. Stat. § 134.90.

¶ 30. The court of appeals relied on opinions from other jurisdictions for its conclusion that all claims for the misappropriation of confidential information are abrogated by Wisconsin enacting a version of the UTSA. *Burbank Grease SVCS., LLC v. Sokolowski,* 2005 WI App 28, ¶¶ 29-37, 278 Wis. 2d 698, 693 N.W. 2d 89. Most of the decisions were from federal courts. They did not rely on interpretations of state statutes, as we do, but rather, they relied only on the nature of the UTSA as creating generally uniform laws, as does the dissent.

¶ 31. We recognize that Wis. Stat. § 134.90 is derived from the UTSA; that 44 states have adopted some version of the UTSA; and that those states' interpretations of similar statutes may serve as useful extrinsic sources to assist in statutory construction, if required. However, as explained above, we conclude that the legislative history of Wisconsin's enactment of

the UTSA is more persuasive because it affirms the plain meaning of § 134.90(6)(b)2.

¶ 32. Furthermore, even if we were to employ cases from other jurisdictions as extrinsic sources for the interpretation of Wis. Stat. § 134.90, we conclude that they do not support the conclusion that all of Burbank's tort claims based on the misappropriation of confidential information have been abrogated.[8] Our review of the cited cases shows that only a few of them support the conclusion of the court of appeals.[9] But rather, after a review of all of those cited decisions, we determine that three categories of cases emerge: (1) when the claims are based *only* on the misuse of confidential information that fits the statutory definition of a trade secret, a claim under the UTSA is the only tort claim available;[10] (2) when the claims are

---

[8] Some cases use the term "preempted" and other cases use the term "displaced" when referring to those claims that cannot be brought due to the UTSA. We use the term "abrogated" because preemption is a legal term of art and displaced is imprecise.

[9] *See, e.g., Learning Curve Toys, L.P. v. Playwood Toys, Inc.,* No. 94C6884, 1999 WL 529572 (N.D. Ill. July 20, 1999); *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.,* 270 F. Supp. 2d 943, 948–49 (W.D. Mich. 2003).

[10] *See R.K. Enter., LLC v. Pro-Comp Mgmt., Inc.,* 356 Ark. 565, at 571 (2004) (concluding that tort claims of conversion and conspiracy stem from the same acts that were found to be misappropriations of trade secrets and therefore, are abrogated by the potential award of damages for the trade secret claim); *Lucini Italia Co. v. Grappolini,* No. 01C6405, 2003 WL 1989605, at \*22 (N.D. Ill. April 28, 2002) (concluding that claims for breach of fiduciary duty, fraud, and promissory estoppel are based on misuse of trade secrets and therefore, are precluded as separate claims under the Illinois Trade Secret Act); *On-Line Techs. v. Perkin Elmer Corp.,* 141 F. Supp. 2d 246, 260–61 (D. Conn. 2001)

based on the misuse of confidential information that does not meet the statutory definition of a trade secret, the UTSA does not abrogate those claims;[11] and (3) when the claims are based on misuse of confidential information, some of which meet the statutory definition of a trade secret and some of which do not, the UTSA abrogates claims only to the extent that they are based on a trade secret; separate claims based on other factual allegations survive.[12] These classes of cases are

---

(precluding claims including unjust enrichment where the plaintiff sought to recover only for the misuse of trade secrets); *Glasstech, Inc. v. TGL Tempering Sys., Inc.,* 50 F. Supp. 2d 722, 730–31 (N.D. Ohio 1999) (precluding common law claims where claims were based only on the misappropriation of trade secrets); *Hutchison v. KFC Corp.,* 809 F. Supp. 68, 71–72 (D. Nev. 1992) (precluding that plaintiff's unjust enrichment and unfair competition claims because they are based solely on trade secrets).

[11] *See Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.,* 985 F. Supp. 827, 830 (N.D. Ill. 1997) (concluding that to the extent materials did not constitute a trade secret, plaintiff could maintain a conversion claim); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.,* 191 F. Supp. 2d 652, 658–59 (E.D. Va. 2002) (concluding that alternate claims, not based on information determined to be a trade secret, could proceed); *Coulter Corp. v. Leinert,* 869 F. Supp. 732, 734–35 (E.D. Mo. 1994) (concluding that only those claims that are premised entirely on a trade secret are abrogated); *Frantz v. Johnson,* 116 Nev. 455, 465 n.3 (2000) (concluding that claims based solely upon the misappropriation of trade secrets are abrogated by the UTSA).

[12] *See Savor, Inc. v. FMR Corp.,* 812 A.2d 894, 898 (Del. 2002) (ruling that plaintiff's common law claims were properly precluded where all claims seeking civil remedies were based solely on the alleged misappropriation of a trade secret); *Automed Techs., Inc. v. Eller,* 160 F. Supp. 2d 915, 921–22 (N.D. Ill. 2001) (allowing a former employer to pursue two breach of fiduciary duty claims against former employee because former employees may have started inappropriately plotting their departure and competitive use of confidential information while

helpful and Burbank could easily fit within those cases comprising the second class. However, as we explained,

still employed by former employer, even where other claims were abrogated by the trade secret statute); *Corporate Express Office Prods. v. Brown,* Nos. 00C608C & 00C666C, 2001 WL 34381111, at *13 (W.D. Wis. July 18, 2001) (concluding that claim was not abrogated insofar as it was not based on the misappropriation of a trade secret); *Thomas & Betts Corp. v. Panduit Corp.,* 108 F. Supp. 2d 968, 972–73 (N.D. Ill. 2000) (concluding that breach of fiduciary duty claim was based solely on misappropriation of trade secret and therefore, abrogated by the UTSA); *Paint Brush Corp. v. Neu,* 599 N.W.2d 384, 391–93 (S.D. 1999) (holding that where a breach of fiduciary duty claim is based on evidence that employee was taking steps to compete with employer while still employed was not abrogated by trade secrets statute); *Thermodyne Food Serv. Prods., Inc. v. McDonald's Corp.,* 940 F. Supp. 1300, 1309 (N.D. Ill. 1996) (holding that breach of fiduciary duty claim premised on conduct other than the misappropriation of trade secret technology would survive, but declined to allow the claim before it because it was based on a trade secret); *Powell Prods., Inc. v. Marks,* 948 F. Supp. 1469, 1474 (D. Colo. 1996) (concluding that "preemption is only appropriate where 'other claims are no more than a restatement of the same operative facts which would plainly and exclusively spell out only trade secret misappropriation' "); *Web Commc'ns Group, Inc. v. Gateway 2000, Inc.,* 889 F. Supp. 316, 321–22 (N.D. Ill. 1995) (concluding that unjust enrichment claim was abrogated to the extent it is based upon a trade secret); *Smithfield Ham & Prods. Co. v. Portion Pac, Inc.,* 905 F. Supp. 346, 348–49 (E.D. Va. 1995); (concluding that tortious interference with contract claims were not abrogated by Virginia's UTSA where those claims did not rely on the misappropriation of trade secrets); *Omnitech Int'l, Inc. v. Clorox Co.,* 11 F.3d 1316, 1330 (5th Cir. 1994) (concluding that a breach of fiduciary duty claim based on trade secret information was abrogated by the Louisiana statute's preclusion provision, but allowed other breach of fiduciary duty claims, although ultimately rejecting them because there was no contractual agreement that would create a fiduciary duty).

cases from other jurisdictions cannot substitute for our construction of the relevant Wisconsin Statute.

¶ 33. In sum, we interpret the comment in the legislative history, our *Minuteman* holding and the three classes of cases from other jurisdictions as support of our interpretation that the plain language of Wis. Stat. § 134.90(6)(a) and (b)2, taken together, are meant to do the following: (1) replace all pre-existing definitions of "trade secret" and remedies for tort claims dependent solely on the existence of a specific class of information statutorily defined as "trade secrets"; and (2) leave available all other types of civil actions that do not depend on information that meets the statutory definition of a "trade secret." Therefore, any civil tort claim not grounded in a trade secret, *as defined in the statute,* remains available to Burbank. Accordingly, we overrule the contrary conclusion of the court of appeals, and we withdraw language from any case that relied on the holding of *Burbank* in regard to § 134.90(6)(a) and (b)2. *See, e.g., Aon Risk Servs., Inc. v. Liebenstein,* 2006 WI App 4, ¶ 10, 289 Wis. 2d 127, 710 N.W.2d 175.

C. Wisconsin Stat. § 943.70(2)

¶ 34. We also interpret Wis. Stat. § 943.70, the computer crimes statute, to ascertain if Burbank has stated a claim under the statute sufficient to survive summary judgment review. The language of § 943.70(2), under which Burbank makes its claim, is as follows:

Offenses against computer data and programs. (a) Whoever willfully, knowingly and without authori-

zation does any of the following may be penalized as provided in pars. (b) and (c):

1. Modifies data, computer programs or supporting documentation.

2. Destroys data, computer programs or supporting documentation.

3. Accesses computer programs or supporting documentation.

4. Takes possession of data, computer programs or supporting documentation.

5. Copies data, computer programs or supporting documentation.

6. Discloses restricted access codes or other restricted access information to unauthorized persons.

¶ 35. Burbank argues that the phrase "other restricted access information" means any information to which access is somehow restricted, including the substantive information contained within a computer's database. We disagree. First, Burbank contends that Sokolowski improperly disclosed confidential information to the other defendants that had been stored on its computer. It does not allege that he obtained the information from Burbank's computer without authorization. However, in order to potentially come within the ambit of para. (2)(a), Sokolowski must have taken the information "willfully, knowingly and without authorization."

¶ 36. Second, we note that subd. (2)(a)6 does not use the term "data" as do subds. 1, 2, 4 and 5. Yet it appears that Burbank's complaint is centered on an alleged taking possession of Burbank's data. "Data" is defined in Wis. Stat. § 943.70(1)(f) as follows:

299

[A] representation of information, knowledge, facts, concepts or instructions that has been prepared or is being prepared in a formalized manner and has been processed, is being processed or is intended to be processed in a computer system or computer network. Data may be in any form including computer printouts, magnetic storage media, punched cards and as stored in the memory of the computer. Data are property.

Subdivision (2)(a)4 addresses the taking of data. However, as noted above, Sokolowski would have had to take possession of the data without authorization in order to contravene subd. 4 and Burbank makes no such allegation.

¶ 37. We interpret the phrase "other restricted access information" in subd. (2)(a)6 as referring to another type of information that is not "data," yet is critical to the protection of computers. We do so because "restricted access codes" is joined with "other restricted access information" in the statute by "or," such that their function within the statute is to act as alternatives. They apply to the same general proscription of impermissible computer access. The former phrase is more specific about the vehicle for access and the latter more general. A plain reading of terms stated in the alternative leads us to conclude that subd. 6 was meant to prohibit disclosing information that would permit unauthorized persons to access restricted or confidential information. There has been no allegation that Sokolowski provided information to others that would permit them to access Burbank's computer system.

¶ 38. We note that the legislative history supports the plain meaning of Wis. Stat. § 943.70, as it did with Wis. Stat. § 134.90. Subdivision (2)(a)6 of § 943.70 was not a part of the original version of § 943.70. The

legislature added that provision in 1983 Wisconsin Act 438. The drafting records reveal that then Deputy Attorney General, Ed Garvey, in a memo dated January 30, 1984 to Representative Gary Johnson and Senator Mordecai Lee, suggested the addition of the subd. 6 to § 943.70 "to correct an oversight in the original law." His memo indicates the Department of Justice's concern with attempted and actual penetration of computer systems through restricted access codes and other information that facilitated access.[13]

The provision was originally drafted as follows:

> Discloses information which he or she knows may enable another person to access data, computer programs or supporting documentation without authorization. This subdivision applies only if another person actually gains that access.

1983 A.B. 695 Draft at 2. However, in the course of drafting amendments, it was changed to the current version:

> Discloses restricted access codes or other restricted access information to unauthorized persons.

1983 Wis. Act 438, § 5. And finally, the Legislative Reference Bureau's statement of purpose supports our plain reading of subd. (2)(a)6: "The bill prohibits a person from wilfully and without authorization disclos-

---

[13] The Garvey memo states:

A simple phrase such as "discloses restricted access codes or other access information to unauthorized persons" would suffice to cover intentional unauthorized disclosure of such information.

We question whether there is a need for different penalties for disclosure, one if it results in attempted penetration of a system and another in case of actual penetration.

ing to another person how to access data, computer programs or supporting documentation." 1983 A.B. 695 Draft, LRB analysis.

¶ 39. In sum, we agree with the court of appeals' construction of Wis. Stat. § 943.70(2)(a)6, that it prohibits the unauthorized disclosure of codes, passwords or other information that grants access to restricted-access systems. *Burbank Grease,* 278 Wis. 2d 698, ¶ 45. We also agree with the court of appeals' conclusion that the statute was not meant to criminalize the disclosure of all types of information that could be stored on a computer, when that information was obtained with authorization in the first instance. *Id.* Burbank's interpretation of the statute would create the overly broad result of criminalizing any unauthorized disclosure of information that had once been stored on a computer that had restricted access, even though the individual had authorization to access the information when he obtained it. Nothing in the statute suggests that is what the legislature meant to do.

D. Summary Judgment Review

1. General principles

¶ 40. Appellate review of summary judgment decisions involves several steps. We first review the complaint to determine if it states a claim for relief. *Westphal v. Farmers Ins. Exch.,* 2003 WI App 170, ¶ 9, 266 Wis. 2d 569, 669 N.W.2d 166. We then examine the answer to see if it joins issues of fact or law. *Id.* Once we have concluded that the complaint and answer join issue, we examine the moving party's affidavits to

determine if they make a prima facie showing that it is appropriate to grant summary judgment to the movant. *Id.* Summary judgment is proper if "there are no genuine issues of material fact and [one] party is entitled to judgment as a matter of law." *Baumeister v. Automated Prods., Inc.,* 2004 WI 148, ¶ 11, 277 Wis. 2d 21, 690 N.W.2d 1; *see also* Wis. Stat. § 802.08(2). In evaluating the evidence, we draw all reasonable inferences from the evidence in the light most favorable to the non-moving party. *Grams v. Boss,* 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980).

2. The pleading of civil law claims

¶ 41. We begin by examining Burbank's civil law claims against Sokolowski, United Grease and United Liquid that are not based on a statutorily-defined trade secret, to determine if all facts pleaded were proved true whether Burbank would be entitled to relief. *Westphal,* 266 Wis. 2d 569, ¶ 9. The remaining claims are: (1) Sokolowski breached the duty of loyalty he owed to Burbank as its agent; (2) United Grease and United Liquid knowingly aided and abetted Sokolowski's breach of his duty of loyalty; (3) all defendants unlawfully interfered with Burbank's business relationships; and (4) all defendants conspired to unlawfully interfere with Burbank's business relationships.

¶ 42. A claim for the breach of an agent's duty of loyalty may sound both in tort and in contract. *See Aon,* 289 Wis. 2d 127, ¶ 8; *Harman v. La Crosse Tribune,* 117 Wis. 2d 448, 454–55, 344 N.W.2d 536 (Ct. App. 1984). When such a claim is made against an employee, the first question is whether the agent has a fiduciary relationship with the employer. *Burg v. Miniature Precision Components, Inc.,* 111 Wis. 2d 1, 7–8, 330 N.W.2d

303

192 (1983). If the employee is a "key employee," then a fiduciary duty of loyalty will exist. *Aon,* 289 Wis. 2d 127, ¶ 26 (citing *Burg,* 111 Wis. 2d at 4–7). Whether an employee is a "key employee" depends on the precise nature of his or her employment duties, which determination requires a factual inquiry. *Aon,* 289 Wis. 2d 127, ¶ 28.

¶ 43. If a duty of loyalty exists, and a third party encourages and profits from a breach of the duty of loyalty, a claim for aiding and abetting the breach will lie. *St. Francis Sav. & Loan Ass'n v. Hearthside Homes, Inc.,* 65 Wis. 2d 74, 80, 221 N.W.2d 840 (1974). This, again, is a fact specific inquiry. *Id.*

¶ 44. Interference with a present or prospective contractual relationship requires proof of the following five elements: "(1) the plaintiff had a contract or prospective contractual relationship with a third party; (2) the defendant interfered with the relationship; (3) the interference was intentional; (4) a causal connection exists between the interference and the damages; and (5) the defendant was not justified or privileged to interfere." *Hoey Outdoor Adver., Inc. v. Ricci,* 2002 WI App 231, ¶ 27, 256 Wis. 2d 347, 653 N.W.2d 763. All of these elements require full factual development.

¶ 45. However, "a civil pleading need not define issues or state detailed facts; only 'fair notice' . . . of what the claim is and the grounds upon which it rests" are required. *State ex rel. Adell v. Smith,* 2001 WI App 168, ¶¶ 5–6, 247 Wis. 2d 260, 633 N.W.2d 231. It is also true that when a court analyzes a complaint to determine whether it states a particular claim for relief, the

label given the claim in the complaint is not dispositive. *Jost v. Dairyland Power Coop.*, 45 Wis. 2d 164, 169–70, 172 N.W.2d 647 (1969).

¶ 46. We conclude that Burbank has sufficiently stated claims against the defendants. For example, regarding Burbank's claim that Sokolowski breached the duty of loyalty he owed Burbank as its agent, Burbank alleged:

> 9. . . . prior to his departure from Burbank, Sokolowski obtained a computer generated report from Burbank's computer system, containing valuable and confidential information about the business relationships Burbank had with its customers . . . .
>
> . . .
>
> 18. As Procurement/Territory Manager at Burbank, Sokolowski owed Burbank certain duties of an agent to a principal, including, a duty of loyalty and a duty not to disclose information material to his agency. Sokolowski stood in a confidential relationship to Burbank regarding the trade secrets and other confidential data provided to him as Procurement/Territory Manager at Burbank.

*Complaint* (Dane County Cir. Ct. July 30, 2002). In regard to United Liquid and United Grease, as well as Sokolowski, Burbank alleged:

> 10. Sokolowski took information he received from Burbank's customer database and entered or directed someone to enter that information into United Grease's computer database.
>
> 11. Sokolowski and United Grease are using the valuable and confidential information obtained from Burbank to solicit customers of Burbank to do business with United Grease.

12. As a result of the illegal and unauthorized use of confidential information belonging to Burbank, Sokolowski and United Grease have succeeded in diverting substantial customer relationships away from Burbank, resulting in loss of profits to Burbank.

. . .

25. United Grease and United Liquid Waste were aware of the agency and other duties owed by Sokolowski to Burbank.

26. United Grease and United Liquid Waste intentionally and wrongfully lent substantial assistance to aid Sokolowski in breaching his agency and other duties to Burbank.

. . .

40. . . . Burbank had contractual or other ongoing business relationships with businesses in the food industry in the Upper Midwest. Burbank had a reasonable expectation that absent improper interference by a third party, these business relationships would continue for the indefinite future.

. . .

42. . . . Sokolowski and United Grease intentionally and improperly interfered with Burbank's business relationships with its customers by inducing or otherwise causing its customers to discontinue their business relationships with Burbank.

*Id.* These allegations are sufficient pleadings to support the remaining civil claims.

¶ 47. All defendants entered general denials to the material facts Burbank asserted, so we now move to the affidavits in support of dismissing Burbank's complaint to see if they make a prima facie case for dismissal. *Westphal,* 266 Wis. 2d 569, ¶ 9.

### 3. The affidavits

¶ 48. The defendants' affidavits in support of summary judgment dismissing the complaint assert that the information Sokolowski used was not sufficiently confidential to warrant the protections that Burbank has claimed, that Sokolowski used only information that he had authority from Burbank to obtain, that Sokolowski had no agreement with Burbank to keep its information confidential after he terminated his employment, and that the information he used is available from sources other than Burbank's records.

¶ 49. We conclude that these affidavits are insufficient to establish that there are no material issues of disputed fact relative to Burbank's remaining claims. For example, disputed material facts include the details of Sokolowski's responsibilities while employed by Burbank; whether at the time that he obtained the confidential information he utilized after he left Burbank's employment, he was planning to work for United Liquid; the context in which he signed his acknowledgement of Burbank's code of conduct that precluded the disclosure of confidential information and whether Burbank would have employed him if he refused to sign; and the participation, or lack thereof, by United Grease and United Liquid in the obtaining and using of Burbank's confidential information. All of these issues, and many more, await the development of a full factual record at trial. Accordingly, the court of appeals erred when it affirmed the circuit court's summary judgment dismissing Burbank's complaint.

## III. CONCLUSION

¶ 50. To summarize, we conclude that Wis. Stat. § 134.90(6)(a) does not preclude all other civil remedies based on the misappropriation of confidential information if the information is not defined as a trade secret under § 134.90(1)(c). Accordingly, in the case before us, § 134.90(6)(b)2 permits civil tort remedies based on the misappropriation of confidential information. Therefore, because the plaintiff's complaint stated other common law claims and because material facts relevant to those claims are disputed, it was error to dismiss the complaint. However, we also conclude that Wis. Stat. § 943.70(2) does not apply when an individual lawfully obtains computer-stored confidential information, but later misappropriates it. Therefore, the plaintiff's § 943.70(2) claim was properly dismissed on summary judgment. Accordingly, we affirm in part; reverse in part and remand to the circuit court for further proceedings.

*By the Court.*—The decision of the court of appeals is affirmed in part; reversed in part and remanded.

¶ 51. ANN WALSH BRADLEY, J. (*dissenting*). This court is not interpreting Wis. Stat. § 134.90 in a vacuum.[1] Section 134.90 is based on the Uniform Trade Secrets Act (UTSA), which 44 states have adopted in some form. *See* Unif. Trade Secrets Act (amended 1985), 14 U.L.A. 529 (Master ed. 2005). Many states have already weighed in on the interpretation of this uniform law.

¶ 52. What is remarkable about the majority opinion is its disregard of the legislative directive that

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version.

§ 134.90 be interpreted to "make uniform the law relating to misappropriation of trade secrets among the states." Section 134.90(7). Although the majority opinion sets forth a litany of cases in footnotes, it fails to recognize that a listing of UTSA cases is no substitute for the mandated uniformity analysis. Why does the majority ignore the legislative directive that § 134.90 be construed to further a uniform interpretation of UTSA among the states?

¶ 53. The majority unabashedly answers the question. It does not think that the uniformity goal is all that important, so it casts it aside. Rather, what is of prime importance to the majority is its own purported plain-language construction of the statute: "cases from other jurisdictions cannot substitute for our construction of the relevant Wisconsin Statute." Majority op., ¶ 32. Lest the reader think that this disregard of the legislative directive is an isolated statement in its opinion, such disregard permeates the majority's analysis.

¶ 54. Not only does the majority disregard the directive of the legislature on how this statute should be interpreted, but also it concludes that its own purported plain-language interpretation is the only "reasonable interpretation." *Id.*, ¶ 28. In the wake of its conclusion, the majority discards what the court of appeals and legal commentators describe as the correct or prevailing interpretation. Because the majority's approach undermines the uniformity goal of UTSA, I respectfully dissent.

I

¶ 55. One essential goal of UTSA is to make uniform the law of the states adopting it. Indeed, the legislature specifically adopted this goal as a directive in

309

§ 134.90(7): "This section shall be applied and construed to make uniform the law relating to misappropriation of trade secrets among states enacting substantially identical laws." Both the drafters of UTSA and the legislature have recognized the need for uniformity in a world of business where transactions occur between states as frequently as within one state's borders.

¶ 56. At most, the majority pays lip service to UTSA's uniformity goal and the corresponding legislative directive. It fails to engage in the necessary analysis to determine what is the uniform interpretation of the preemption provisions in UTSA or how cases decided by courts in other UTSA jurisdictions analyze the language in these provisions.

¶ 57. Instead, the majority reasons that its interpretation promotes the required uniformity of interpretation because: (1) its interpretation is based on the plain meaning of the words "trade secret," (2) other states have the same language in the statute, and (3) some of those states' interpretations of UTSA are in accord with its interpretation. It reasons "[our] construction in this regard is in accord with the promotion of uniformity by [§ 134.90(7)], because the statutory definition of a trade secret is made uniform throughout the states enacting a version of the Uniform Trade Secrets Act (UTSA), and our application of that definition has been in accord with other UTSA jurisdictions." Majority op., ¶ 26.

¶ 58. Of course other states have the same language in the statute. That is the nature of uniform laws. The question is not whether other states have the same language, but rather how do other states interpret that language and why do they interpret it that way?

¶ 59. The majority does not seem to care about the answer. Concluding that its analysis of the plain

language of the statute "results in only one reasonable interpretation," it declares that the "statute is not ambiguous." *Id.*, ¶ 28. What about states that interpret the statute differently than does the majority? Why is the interpretation given by courts in those states unreasonable?

¶ 60. The majority weakly attempts to address these questions. It does not analyze the interpretations of other states observing only that "cases from other jurisdictions cannot substitute for our construction of the relevant Wisconsin Statute." *Id.*, ¶ 32.

¶ 61. Furthermore, the majority asserts that a number of UTSA cases from other jurisdictions are distinguishable because "they relied only on the nature of the UTSA as creating generally uniform laws." *Id.*, ¶ 30. This assertion is specious. The majority is distinguishing these cases for doing precisely what they were supposed to do (and precisely what the legislature has directed this court to do in § 134.90(7)): apply and construe § 134.90 in a manner to make the law uniform among states adopting UTSA.

¶ 62. In discarding other states' interpretations, the majority stands the legislative directive of uniformity on its head. What is needed is a thoughtful analysis of the interpretations of other states. Instead, the majority strikes out on its own path that begins and ends with its own purported plain-language construction. Ironically, the majority does not explain how its interpretation of § 134.90(6) comports with the plain language of § 134.90(7), the legislative directive for a uniform interpretation.

¶ 63. I acknowledge that courts across jurisdictions may be less than absolutely uniform in their approaches to UTSA preemption. This lack of absolute uniformity, however, does not mean that this court

311

should discard everything they have said. Although legitimate debate may remain as to what rule of preemption UTSA dictates, the majority should at least meaningfully engage in that debate.

¶ 64. Standing in contrast to the majority's approach is that of the court of appeals. Unlike the majority, the court of appeals' decision undertakes an analysis of the interpretations that courts in other UTSA jurisdictions have given to the UTSA preemption provisions embodied in § 134.90(6). *See Burbank Grease Servs., LLC v. Sokolowski,* 2005 WI App 28, ¶¶ 29–37, 278 Wis. 2d 698, 693 N.W.2d 89.

¶ 65. The court of appeals determined that if common law claims for unauthorized use of confidential information that did not meet the statutory definition of a trade secret were permitted, the result would undermine the uniformity and clarity that motivated the creation and passage of UTSA. *Id.,* ¶ 30. It further determined that the prevailing rule in most UTSA jurisdictions is that UTSA is meant to replace tort claims for unauthorized use of confidential information with a single statutory cause of action. *Id.,* ¶ 35.

¶ 66. The court of appeals found this rule persuasive. It therefore concluded that § 134.90(6) preempts common law claims, however denominated, that are based solely on allegations or evidence of unauthorized use of confidential information, regardless of whether that information meets the statutory definition of a trade secret. *Id.,* ¶ 37.

¶ 67. I laud the court of appeals for its analysis of UTSA case law in light of the purposes of UTSA in order to reach what it deemed the proper interpretation of § 134.90(6). The court of appeals correctly sought to further UTSA's uniformity goal and obey the corre-

sponding legislative directive in § 134.90(7). If only the majority would do the same.

¶ 68. The court of appeals' interpretation of UTSA's preemption provision is contrary to the majority's interpretation but consistent with that of legal commentators. One such commentator, Robert Unikel, explains in detail. He divides the case law in UTSA jurisdictions into three views. *See* Robert Unikel, *Bridging the "Trade Secret" Gap: Protecting "Confidential Information" Not Rising to the Level of Trade Secrets,* 29 Loy. U. Chi. L.J. 841, 886–87 (Summer 1998). Under the first view, which is the view adopted by the court of appeals and rejected by the majority opinion, there is preemption of all non-UTSA claims for the protection of both trade secrets *and* other confidential information. *Id.* at 886. Unikel explains that, absent contrary legislative guidance by a state, this view "is the most reasonable." *Id.* at 887. Contrast the majority opinion: "Our analysis . . . results in only one reasonable interpretation." Majority op., ¶ 28.

¶ 69. Are Unikel and the court of appeals unreasonable, or is the majority? Here is Unikel's explanation for why the interpretation of UTSA applied by the court of appeals is the more reasonable:

> Permitting litigants in UTSA states to assert common-law claims for the misappropriation or misuse of confidential data would reduce the UTSA to just another basis for recovery and leave prior law effectively untouched. Further, by expressly exempting "contractual remedies, whether or not based upon misappropriation of a trade secret" and "other civil remedies that are not based upon misappropriation of a trade secret" from its preemptive penumbra, *the UTSA makes clear that only those claims addressing or arising out of wrongs distinct from pure information piracy survive passage of*

313

*the trade secret statute. Indeed, contrary interpretations of the UTSA's "Effect on Other Law" provision [§ 134.90(6) in Wisconsin], such as those embodied in the second and third views of UTSA preemption, effectively negate the UTSA's goal of promoting uniformity in "trade secrets" law. Additionally, these contrary interpretations render the statutory preemption provision effectively meaningless.*

*Bridging the "Trade Secret" Gap,* at 888 (emphasis added; footnotes omitted).

¶ 70. Thus, the majority opinion has adopted one of the views that Unikel says "render[s] the statutory preemption provision effectively meaningless." *Id.* That does not sound very reasonable to me.

¶ 71. Moreover, the court of appeals and Unikel do not stand alone. Another commentator's interpretation of UTSA, like that of Unikel and the court of appeals, is that the intent of UTSA was to preempt common law claims based on "allegedly secret information" regardless of whether such information would previously have been denominated a "trade secret":

> Beginning in the late 1990s, courts applying UTSA in states around the country have ruled that many alternative trade secret claims—alleged as unfair competition, common law misappropriation, unjust enrichment, and so forth—are pre-empted by the UTSA's statutory scheme. . . . *The common thread among these cases is that each state's legislature intended to occupy the field of claims involving allegedly secret information through the UTSA.*

Tait Graves, *A Trade Secret by Any Other Name is Still a Trade Secret: Why UTSA Pre-emption Matters,* 10 Intell. Prop. Strat., No. 7, 3 (April 2004) (emphasis added).

314

¶ 72. In the end, the majority discards all interpretations of UTSA but its own, concluding that its purported plain-language interpretation is the only reasonable one. In the wake of its conclusion, the majority rejects what the court of appeals and legal commentators describe as the correct or prevailing interpretation. The majority thereby undermines the uniformity goal of UTSA and violates the corresponding legislative directive in § 134.90(7).

## II

¶ 73. The problem with the majority opinion is amplified by its approach to the definition of "trade secret" in § 134.90(1)(c). Although this court was not asked to review whether Burbank's customer information was a "trade secret" under the statutory definition,[2] the scope of that definition is pivotal in interpreting the preemption provisions in UTSA. This much the majority seems to recognize. *See* majority op., ¶ 19.

¶ 74. The majority concludes, however, that § 134.90(6) does not preempt civil remedies based on misappropriation of "confidential information" that falls outside the statutory definition of a "trade secret." Majority op., ¶ 1. The majority thereby distinguishes between "statutorily-defined" trade secrets as actionable under UTSA and other "confidential information" as actionable under Wisconsin common law. *Id.*, ¶ 24. Such a distinction, however, may be just what the drafters of UTSA (and the Wisconsin legislature in adopting UTSA) sought to avoid.

¶ 75. The majority's conclusion again appears to be at odds with the interpretation given UTSA by legal

---

[2] Burbank did not seek review of the court of appeals' determination that its customer information was not a "trade secret" as defined in Wis. Stat. § 134.90(1)(c).

commentators. According to one commentator, UTSA was intended to divide information into two categories: (1) actionable "trade secrets" and (2) *unprotected* knowledge or skill. For example, one commentator writes:

> The Restatement of Unfair Competition, following the lead of the Uniform Trade Secrets Act and cases following the Act, *eliminates the distinction between information that is a trade secret and other confidential information.* All secret information of economic value falls within the definition of trade secrets. Trade secrets are protected against any misappropriation.

Edmund W. Kitch, *The Expansion of Trade Secrecy Protection and the Mobility of Management Employees: A New Problem for the Law,* 47 S.C. L. Rev. 659, 662 (Summer 1996) (emphasis added; footnotes omitted).

¶ 76. Similarly, Unikel states that UTSA reflects a " 'two-tiered' approach to the protection of commercial knowledge—an approach in which information is classified only as either a protected 'trade secret' or unprotected 'general skill and knowledge.' " *Bridging the "Trade Secret" Gap,* at 868.[3]

¶ 77. To the extent these commentators are correct, the majority's construction of § 134.90 is not. If these commentators are correct, it would appear that common law causes of action for misappropriation of

---

[3] Unikel characterizes both the First Restatement of Torts and the Third Restatement of Unfair Competition as reflecting the same approach. Robert Unikel, *Bridging the "Trade Secret" Gap: Protecting "Confidential Information" Not Rising to the Level of Trade Secrets,* 29 Loy. U. Chi. L.J. 841, 867–68 (Summer 1998). He is somewhat critical of this two-category approach, however, and he argues for a three-category approach. *Id.*

"confidential information" that is not a "trade secret" under UTSA are no longer available in UTSA states such as Wisconsin.

¶ 78. The majority's construction of § 134.90(6) would undermine uniformity if courts in other states gave their analogous provisions of UTSA such a construction. If litigants in the various states could maintain common law claims for misappropriation of "confidential information" that does not rise to the level of a UTSA-defined "trade secret," then trade secret law across jurisdictions would continue to depend on the varying common law rules as to misappropriation of economically-valuable secret information. The majority does not endeavor to explain how this could have been the intent of either the drafters of UTSA or the legislature.

## III

¶ 79. In sum, the majority disregards the uniformity goal of UTSA, disobeying the legislative directive that § 134.90 be construed to further a uniform interpretation of UTSA among the states. Because I disagree with the majority's approach, I respectfully dissent.

¶ 80. I am authorized to state that Chief Justice SHIRLEY S. ABRAHAMSON joins this dissent.